Joseph WAECHTER and Gloria Wae-
chter, individually and as Personal
Representatives of the Estate of Mi-
chael A. Waechter, Deceased, Plaintiffs,

v.

SCHOOL DISTRICT NO. 14–030 OF CAS-
SOPOLIS, MICHIGAN; Edwardsburg
Public Schools Board of Education;
James Olin; Patrick Fetherston; James
Culver; and Craig Gordon, in their in-
dividual capacities only, Defendants.

No. 1:90–CV–769.

United States District Court,
W.D. Michigan, S.D.

Sept. 11, 1991.

William J. Brennan, Dykema, Gossett, Grand Rapids, Mich. and John B. Roesler, Caldwell, Smith, Jesmer & Roesler, P.A., Santa Fe, N.M., for plaintiffs.

Charles F. Behler, Smith, Haughey, Rice & Roegge, P.C., Grand Rapids, Mich. and Donald J. Bonato, Thrun, Maatsch & Nordberg, Lansing, Mich., for defendants.

Charles E. Barbieri, Foster, Swift, Collins & Smith, P.C., Lansing, Mich., for arbitrator.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

This matter arises out of the death of Michael A. Waechter ("decedent"). Plaintiffs Joseph and Gloria Waechter, parents of the decedent, allege violations of their and their son's civil rights protected by the United States Constitution. They also allege violations of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Michigan wrongful death statute, M.C.L.A. § 600.2922.[1] Pending before the Court is

---

1. Plaintiffs' complaint is in 51 numbered paragraphs. However, the separate counts of the complaint are not separately numbered. Although the Court disapproves of this style of pleading, a review of the complaint indicates that plaintiffs have pled roughly five causes of action, as follows:

defendants School District No. 14–030 *et al.*'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

## I.

The facts as taken from plaintiffs' complaint are treated as true for the purposes of a motion to dismiss. According to the complaint, decedent died on December 19, 1988, on the playground of Eagle Lake Elementary School. At that time he was a thirteen year old, fifth grade special education handicapped student enrolled at the school.

Decedent was born with a congenital heart defect requiring temporary corrective surgery at the age of one week and open heart surgery at the age of sixteen months. His condition left him with symptoms of dizziness, fainting, chest pain, exhaustion, and rapid heart palpitations. As an infant, he also contracted meningitis which left him with orthopedic and learning disabilities. His legs were of uneven length and he wore a brace on the right leg from his knee to his toes to restrict ankle movement. As a result, he had poor balance and certain physical limitations. Because of his heart condition, decedent's physician directed that he was not to participate in competitive contact sports or any forced exertion. Defendants were informed and aware of decedent's medical history, physical limitations, and doctor's orders.

Defendant Craig Gordon was decedent's fifth grade teacher and recess supervisor. As recess supervisor, he customarily employed a form of punishment known as the "gut run." The gut run was a 350–yard sprint that was required to be completed in under two minutes. Plaintiffs allege that the other defendants knew, or should have known, that Gordon employed the gut run as a disciplinary punishment. On December 19, 1988, Gordon instructed decedent to run the gut run as punishment for talking in line with another classmate during re-

cess. While making the run, decedent suffered cardiac arrhythmia and died. Thereafter, defendants allegedly concealed the true circumstances of decedent's death. Plaintiffs were informed that their son died while voluntarily playing football.

Eagle Lake Elementary School was at all pertinent times a public elementary school in Cass County, Michigan. It was under the jurisdiction of defendants School District Number 14–030 of Cassopolis, Michigan ("School District") and Edwardsburg Public Schools Board of Education ("School Board"). Defendants School District and School Board were allegedly responsible for the training of teachers as to discipline, safety, and supervision of students. They were recipients of federal financial assistance and special education programs for handicapped students. Defendant Olin was at all pertinent times the superintendent of schools for the School District. Defendant Fetherston was president of the School Board and defendant Culver was principal of Eagle Lake Elementary School. These defendants are all sued in their individual capacities only.

## II.

A motion to dismiss tests whether a claim has been adequately stated in the complaint. The Court's inquiry at this point, before the reception of any evidence by affidavit or admission, is merely whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief. In making this determination, the allegations in the pleading are taken at "face value", *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "[W]ell pleaded facts are taken as true, and the complaint

1. Violation of plaintiffs' fourteenth amendment substantive due process rights;
2. Violation of decedent's fourteenth amendment procedural due process rights;
3. Discrimination against decedent on the basis of handicap;

4. Violation of the Equal Protection and Privileges and Immunities Clauses of the United States Constitution; and
5. Pendent state law claims for wrongful death.

is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir.1975). All reasonable inferences which might be drawn from the pleading must be indulged. *Fitzke v. Shappell*, 468 F.2d 1072, 1076 n. 6 (6th Cir.1972). The court must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### III.

### A. FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS

■ The Due Process Clause of the fourteenth amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." Plaintiffs' claim invoking the substantive component of the Due Process Clause is brought pursuant to Title 42 United States Code Section 1983 and is premised on the assertion that defendants had a categorical obligation not to harm decedent under the circumstances of this case. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989).[2] Mere lack of due care cannot trigger a violation of constitutional proportions. In *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), the Supreme Court found that:

> [T]he due process clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury

to life, liberty, or property. (Emphasis in original.)

For plaintiffs to prevail, the action taken must amount to a deliberate decision of a government actor to deprive a person of life, liberty, or property. *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665.

■ In *DeShaney*, the court determined that when an individual is in the "custody" of the state, the state has an affirmative responsibility to protect that individual from deprivations of life, liberty, or property. *DeShaney*, 489 U.S. at 199–200, 109 S.Ct. at 1005–1006. The court found that the state's failure to protect a child from physical abuse did not amount to a substantive due process violation where that child was beaten to death by his father. Although the state knew of the father's propensity for child abuse, and it voluntarily undertook to protect the child from abuse, as long as the child was not in state custody the state was under no constitutional duty to protect the child. Accordingly, the state did not cause the deprivation of the child's life. The court held that the state's affirmative duty toward an individual:

> [A]rises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. *In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause,* not its failure to act to protect his liberty interests against the harms inflicted by other means.

*DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005 (citations omitted) (emphasis added).[3]

---

**2.** Title 42 United States Code Section 1983 states, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**3.** *DeShaney* implicitly rejects the notion that the state may stand in a "special relationship" with individuals by undertaking to protect them from harm by third parties. Unless the individual is in a custodial relationship with the state,

This language is somewhat troublesome in undertaking a comprehensive substantive due process analysis. Several circuit courts have held that an egregious abuse of governmental power gives rise to a substantive due process claim. There is no requirement that the government actor stand in any sort of custodial relationship with the individual affected by his action. The state need not restrain the individual's personal liberty, but more generally:

> The substantive component of the due process clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them [and thereby] serves to prevent governmental power from being 'used for purposes of oppression.'"

*Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 200 (6th Cir.1987) (quoting *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (citations omitted)). *See also Cale v. Johnson,* 861 F.2d 943, 950 (6th Cir.1988); *Burton v. Livingston,* 791 F.2d 97, 99–100 (8th Cir. 1986).

 Arguably, after *DeShaney,* an egregious abuse of governmental power can only arise in situations where, in some sense, a custodial relationship exists between the individual harmed and the state actor who inflicted the harm. *DeShaney* is explicit that the protections of the due process clause are triggered when the state's affirmative action "restrains the individual's freedom to act on his own behalf." *DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1006.[4] Applying this reading of *DeShaney* as a general rule in substantive due process analysis, it is clear that decedent was in a custodial relationship with defendant Gordon.[5] Gordon was his teacher. He was aware of decedent's physical limitations and as recess monitor he undertook to supervise decedent's activities. As alleged in the complaint, Gordon's affirmative action led to decedent's death. The situation is clearly similar to that in *Webb v. McCullough,* 828 F.2d 1151 (6th Cir.1987). In that pre-*DeShaney* case, the Sixth Circuit found that a high school teacher stands in an *in loco parentis* relationship with his students.[6] This relationship heightens his responsibility for the students' well-being. Accordingly, punishment which is not disciplinary in nature or which clearly exceeds reasonable discipline may amount to a substantive due process violation. *Webb,* 828 F.2d at 1158.

---

no constitutional duty to protect him from third parties can arise. *Id.* 489 U.S. at 197–98, n. 4, 109 S.Ct. at 1004–05, n. 4.

**4.** This Court's reading of the "egregious government conduct" cases indicates that typically the individual whose substantive due process rights were violated was in fact in a custodial relationship with the state or government actor. *E.g. Cale v. Johnson,* 861 F.2d at 944 (Plaintiff was a federal prisoner who claimed that drugs had been planted on him by a guard); *Vinson,* 820 F.2d at 200–201 (Plaintiff's children were taken into custody by state juvenile services probation officer); *Burton,* 791 F.2d at 98–99 (Plaintiff was a state prisoner, threatened by a prison guard). Accordingly, if *DeShaney* adds a custody requirement to substantive due process analysis, its impact appears to be fairly limited. Realistically, most substantive due process violations involve custodial relationships with the state.

**5.** If a custodial relationship is required by *DeShaney,* it must be distinguished from the sort of relationship discussed in *Ingraham v. Wright,* 430 U.S. 651, 671–72, 97 S.Ct. 1401, 1412–13, 51 L.Ed.2d 711 (1977). In that case, the Supreme

Court found that a public school student was not in "custody" as that term is used in eighth amendment cruel and unusual punishment analysis. Accordingly, eighth amendment punishment concerns were not invoked by corporal punishment of a public school student via the due process clause. *See also Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (Cruel and unusual punishment analysis applies via due process clause to involuntarily committed mental patients). The custody relationship that is arguably required by *DeShaney* is one where the individual's freedom is restricted by a government actor. It is not necessary that the individual be held against his will. The important consideration is whether the state actor exercised control over the individual's "personal liberty" under color of state law.

**6.** Likewise, in *Stoneking v. Bradford Area School Dist.,* 882 F.2d 720, 723–24 (3rd Cir. 1989), on remand from the Supreme Court in light of *DeShaney,* the circuit court found that a custody relationship may exist between a public school student and her teacher. The court determined that such a result was not inconsistent with *DeShaney* and may form the basis for a substantive due process claim.

Likewise, even if the "egregious abuse of governmental power" standard survives *DeShaney* without a custody requirement, Gordon's instruction to run the gut run may have violated decedent's substantive due process rights. It was not simple negligence as urged by defendants. If true, a reasonable jury could conclude that Gordon's command:

> [W]as so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

*Webb*, 828 F.2d at 1158.

■ Plaintiffs' substantive due process claims against the remaining defendants rely on a finding that they failed to properly train and supervise defendant Gordon. Paragraph 33 of the complaint alleges:

> The individual Defendants, by their actions and inactions, could not help but know that permitting and sanctioning the "gut run" would subject Michael A. Waechter to the risk of injury or heart failure, and Defendants therefore were grossly negligent, grossly reckless and displayed reckless disregard and deliberate indifference for the health and safety of Michael A. Waechter in the face of his known health problems.

Liability attaches to official policy determinations which are made by a state official:

> responsible for establishing final government policy respecting such activity.... [L]iability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). Defendants do not contend that they were not responsible for establishing final government policy. Rather, they assert that any alleged constitutional violations are not attributable to a policy or custom of the defendants. However, plaintiffs' complaint alleges that these defendants knew or should have known of Gordon's practice of using the gut run as discipline. They chose not to interfere with Gordon's customary imposition of this punishment. This alleged failure may show such "deliberate indifference" to the rights of persons such as decedent to rise to the level of a violation attributable to these defendants. *See Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989).

■ Finally, defendants contend that they are protected by eleventh amendment qualified immunity. They assert that the legal standard making their actions a substantive due process violation was not clearly established at the time of decedent's death. If the defendants' actions were objectively reasonable as measured by clearly established law, then they are immune from liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The important consideration is whether defendants could fairly be said to "know" that the law forbade the action they undertook. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. To answer this question, the Court need look no further than the Sixth Circuit's holding in *Webb*. As early as September 17, 1987, defendants were on notice that in the public school context, physical punishment which is not disciplinary in nature or which is so disproportionate to the need presented as to amount to "a brutal and inhumane abuse of official power literally shocking to the conscience" violates an individual's substantive due process rights. *Webb*, 828 F.2d at 1158 (citation omitted).

## B. FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

■ The procedural component of the fourteenth amendment requires the state to accord an individual appropriate procedural safeguards in cases where the state denies that individual life, liberty, or property. *DeShaney*, 489 U.S. at 195, 109 S.Ct. at 1005. In the related area of corporal punishment in the public school setting, the

Supreme Court has determined that if the state affords a student adequate post-punishment remedies to deter unjustified and/or excessive punishment, the student receives all process that is constitutionally due. *Ingraham*, 430 U.S. at 682, 97 S.Ct. at 1418.

Michigan law provides that a school teacher or administrator may be civilly liable for inflicting physical force on a student in cases of "gross abuse and disregard for the health and safety of the pupil." M.C.L.A. 380.1312(3). The burden is on plaintiffs to affirmatively plead and prove that these state remedies are inadequate for redressing the alleged wrong. *Watts v. Burkhart*, 854 F.2d 839, 843 (6th Cir.1988). Plaintiffs have failed to fulfill this threshold requirement. Accordingly, their procedural due process claims must be dismissed.

## C. DISCRIMINATION ON THE BASIS OF HANDICAP

■ Plaintiffs assert that decedent was discriminated against on the basis of handicap in violation of Section 504 of the Rehabilitation Act of 1973.[7] The elements of a cause of action under Section 504 are:

(1) The plaintiff is a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*Doherty v. Southern College of Optometry*, 862 F.2d 570 (6th Cir.) *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1988).

From the face of the complaint, the first, second, and fourth elements of a cause of action are satisfied. Plaintiffs contend that the third element is satisfied by the fact that a reasonable accommodation was not made for decedent's handicap in "the general program of study which incorporated the gut run as a primary procedure for discipline." Plaintiffs' Brief at 28.

Assuming for the sake of argument that plaintiffs have successfully articulated this third element and stated a claim for violation of the Rehabilitation Act, it appears that they are not entitled to any relief under the Act. Section 505(a)(2) of the Rehabilitation Act provides that violations of Section 504 are to be remedied pursuant to the procedures and rights set forth in Title VI of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000d *et seq.*). 29 U.S.C. § 794a(a)(1). Title VI provides aggrieved claimants with a right to seek modification of allegedly discriminatory programs, but it does not permit an award of damages. *See Franklin v. Gwinnett County Public Schools*, 911 F.2d 617 (11th Cir.1990). To the extent plaintiffs seek a modification of defendants' handicap program, their claims are moot. There is no longer a need to make allowances in the program for decedent's handicap. Likewise, they are foreclosed from bringing an action for damages either on their behalf or on behalf of their son.

## D. PRIVILEGES AND IMMUNITIES CLAIMS

■ Plaintiffs allege that defendants conspired to conceal the circumstances surrounding decedent's death. This conspiracy was assertedly designed to block plaintiffs' constitutional right of access to the courts as found in Article IV, Section 2 and the first and fourteenth amendments to the United States Constitution. It is clear that individuals have a substantive constitutional right of access to courts. *Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir.1983). The basis for this right is the provision of a free flow of ideas to assure that public decisionmakers will be sufficiently informed to carry out their function. *Os-*

---

7. This Section provides:

No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefit of, or be subject to discrimination under any program or activity receiving federal financial assistance.

29 U.S.C. § 794.

*born v. Pennsylvania–Delaware Service Station Dealers Assn.,* 499 F.Supp. 553, 556–57 (D.Del.1980). In *Ryland,* the court found that interference with the right of access to the courts "may by itself amount to a constitutional deprivation (unless reasonably justified by a countervailing state interest)." *Ryland,* 708 F.2d at 975.

Plaintiffs' complaint fails to set out the prerequisites for a violation of their right of access to the courts. They assert that defendants conspired to cover up the true circumstances of decedent's death. However, plaintiffs have not alleged that this conspiracy in any way limited their access to the courts. They do not contend that it caused a delay in their recognizing a right to relief or that it impacted on their ability to bring the present action. Plaintiffs' allegations, if true, are insufficient to make a "showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

### E. PENDENT STATE CLAIMS

■ The Court is granted wide discretion in determining whether to exercise jurisdiction over state claims arising out of the same transaction or occurrence as plaintiffs' federal claims. The justification for exercising so-called pendent jurisdiction lies in considerations of judicial economy, convenience, and fairness. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).[8] In the present case, plaintiffs have pled a cause of action arising under Michigan's survival and wrongful death statutes. M.C.L.A. §§ 600.2922 and 600.2923. Although these claims arise out of the same transaction or occurrence as plaintiffs' federal claims, they involve questions of law unique to Michigan, especially regarding qualified immunity and other defenses to liability. Accordingly, the Court declines to exercise jurisdiction over these claims.

### IV.

For the reasons stated above, defendants' motion to dismiss is denied in part and granted in part. It is denied as to plaintiffs' claim of a substantive due process violation. It is granted as to plaintiffs' procedural due process, handicap discrimination, right of access to courts, and pendent state law claims.

---

8. *Gibbs* may have been superseded by Title 28 United States Code Section 1367. That section requires federal courts to retain jurisdiction over pendent state claims, unless: (1) the claims raise a novel or complex issue of state law; (2) the claims substantially predominate over the federal law claims; (3) the district court has dismissed all the federal law claims; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. This law became effective December 1, 1990, in all actions commenced on or after that date. Plaintiffs' complaint was filed September 18, 1990. Accordingly, *Gibbs* applies in this action.