**Willie BURTON, Jr., Appellant,**

v.

**A. LIVINGSTON, Appellee.**

No. 85–1941.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1986.

Decided May 8, 1986.

---

Thomas L. Barron of Little Rock, Ark., for appellant.

Jerry E. Rose, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before HEANEY, ARNOLD, and WOLLMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Willie Burton, Jr., an inmate at the Tucker Maximum Security Unit of the Arkansas Department of Correction, appeals from the dismissal of his 42 U.S.C. § 1983 complaint against Sgt. A. Livingston, a guard at the Cummins Unit of the Arkansas Department of Correction.

Mr. Burton alleged in his complaint that on 12 June 1984 he was in attendance at the federal courthouse in Pine Bluff, Arkansas, for a hearing on a complaint against guards at the Cummins Unit. He was accompanied to that hearing by Mr. Livingston and at least one other guard. Mr. Burton's handwritten *pro se* complaint alleged that after his appearance in court

he was taken to the "holding tank" in the courthouse. Then:

> Livington had continued harassing me pointing at his revolver pistol as threats; he then pull his revolver, thumb cocked it and stated, ["] nigger run so I can blow your Goddamn brains out, I want you to run so I'll be justified ["]; then another prison guard stepped between us, and move me to the opposite side of him from defendant Livington; then just out side the Court Building, as we were approaching the transporting van, def. Livington drew his pistol 357 Magnum and stated ["] nigger run, I want you to run ["], where he tried his best to scare me into running where he could shoot me in my back and say I tried to escape; I was then placed on the van and transported back to Cummins Prison Unit ... [sic]

Complaint at 3. Mr. Burton's complaint asserted that the alleged conduct of Sgt. Livingston violated the Eighth Amendment prohibition on cruel and unusual punishment and the Fourteenth Amendment Due Process and Equal Protection Clauses. He requested damages and injunctive relief. The District Court dismissed Mr. Burton's complaint *sua sponte* for failure to state a claim for which relief may be granted. The Court stated that " '[m]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.' " *Burton v. Livingston*, No. PB–C–85–289, slip op. at 2 (E.D.Ark. July 19, 1985), *quoting Coyle v. Hughs*, 436 F.Supp. 591, 593 (W.D.Okla.1977). We reverse. On the facts alleged in Mr. Burton's complaint, he has stated a claim which is entitled to be heard.

■ As a general rule, the federal civil-rights remedies available to a person under 42 U.S.C. § 1983 are not so broad as those available under state law, common or statutory. While a plaintiff may seek redress and win damages under state law for any unwanted touching under the common law of battery, the federal remedies under § 1983 are directed against more egregious conduct. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). "Not

every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* Similarly, while the common law may provide a cause of action for assault when there is no contact at all, and even for some offensive words under the law of defamation, § 1983 does not duplicate the common law in these areas.

The District Court correctly stated the general proposition that in the usual case mere words, without more, do not invade a federally protected right. See *Coyle v. Hughs*, 436 F.Supp. 591, 593 (W.D.Okla. 1977). It is also true that in most instances of "simple assault," as the term is known to the common law, there is no federal action under § 1983, see *Bolden v. Mandel*, 385 F.Supp. 761, 764 (D.Md.1974), unless actual physical injury results from the assault and the defendant's conduct is especially blameworthy. But these propositions are true not because the Due Process Clause distinguishes hypertechnically between the various forms of common-law trespass, but rather because in most instances conduct which is called "defamation" or "simple assault" does not invade a federally protected right. The Due Process Clause was intended to secure the individual from the abuse of power by government officials. *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). The threshold level at which an individual's due-process rights are violated is different from the threshold level at which he acquires a cause of action in tort. But the difference usually has nothing to do with the common-law label attached to the underlying conduct.

■ Due process of law has been said to encompass a "guarantee of respect for those personal immunities which are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental,' " *Rochin v. California*, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952) (Frankfurter, J., quoting Cardozo, J., in *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). The

guarantee of due process draws a line between the power of the government, on the one hand, and the security of the individual, on the other. This line is not a fixed one like a property boundary. Its location must be surveyed anew by the court in each case through an examination of the benchmarks disclosed by the circumstances surrounding the case. Among these landmarks are the nature of the individual right, the relationship between the individual and the government, and the justification offered by the government for its conduct. Thus, a lawfully incarcerated prisoner may be said to forfeit rights which would be taken for granted in free society, when that is necessary for the order and discipline of a penal environment. See *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). However, a prisoner does not lose all of his civil rights. "[T]hose that are fundamental follow him, with appropriate limitations, through the prison gate, and the walls do not foreclose his access to the courts to protect those rights." *Courtney v. Bishop*, 409 F.2d 1185, 1187 (8th Cir.), *cert. denied*, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969).

■ In determining whether the conduct of a prison guard has impermissibly infringed a protected right of the prisoner, we must consider (1) the need for the guard's action; (2) the relationship between that necessity and the amount of force actually used; (3) the degree of injury to the prisoner's retained rights; and (4) whether the conduct was a good-faith effort to maintain discipline or engaged in maliciously and sadistically for the sole purpose of causing harm. See *Johnson v. Glick*, 481 F.2d at 1033.

In applying these principles to the present case, Mr. Burton's allegations must be taken as true for the purpose of determining whether he stated a claim cognizable under § 1983. A *pro se* complaint must be liberally construed and can be dismissed only if it appears to a certainty that the complainant can prove no set of facts which would entitle him to relief. *Estelle*

*v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

■ The complaint states that Sgt. Livingston pointed a lethal weapon at the prisoner, cocked it, and threatened him with instant death. This incident occurred immediately after the prisoner had given testimony against another guard in a § 1983 action. The death threat was accompanied by racial epithets which strongly suggest that the prisoner would have been treated differently had he not been black. Apparently, another guard who was present took the threat seriously enough to step between the prisoner and Sgt. Livingston. In case the point had not been made, Sgt. Livingston repeated the performance moments later. According to the uncontroverted words of the complaint, there was no provocation for the guard's action other than the prisoner's attempting to exercise his due-process and First Amendment right of access to the federal courts. The complaint describes in plain words a wanton act of cruelty which, if it occurred, was brutal despite the fact that it resulted in no measurable physical injury to the prisoner. The day has passed when an inmate must show a court the scars of torture in order to make out a complaint under § 1983. We hold that a prisoner retains at least the right to be free from the terror of instant and unexpected death at the whim of his allegedly bigoted custodians.

■ So far as we can tell at this early stage of the case, the guard's conduct was not motivated by the necessity of correcting a rebellious inmate or by legitimate concerns for institutional security. See *Bolden v. Mandel*, 385 F.Supp. at 764. Neither is it an instance of rough language which resulted only in bruised feelings. See *Coyle v. Hughs*, 436 F.Supp. at 593. In such cases the actions of a guard might well be *de minimis* or in any event excusable by the realities of maintaining order amongst a large population of prisoners, who are, as we are aware, "not usually the most gentle or tractable of men and women ...", *Johnson v. Glick*, 481 F.2d at 1033. This is rather a complaint that a prison

guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death. Under the circumstances of this incident, the guard's actions, if proved, were a violation of Mr. Burton's rights under the First Amendment and under the Due Process and Equal Protection[1] Clauses of the Fourteenth Amendment.[2]

Reversed and remanded.

---

1. A simple allegation that an individual prison guard used racially offensive language in dealing with a prisoner might not, by itself, state a claim under the Equal Protection Clause. Compare *Black Spotted Horse v. Else,* 767 F.2d 516, 517 (8th Cir.1985). But when the racially derogatory language is coupled with conduct infringing the prisoner's right to security of his person, an inference arises that the conduct was motivated by racial bias.

2. We do not reach plaintiff's Eighth Amendment theory. We have held that his complaint states a claim under the First Amendment as well as under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. All of the facts that would be relevant to an Eighth Amendment theory will be admissible on the various other theories that his complaint alleges sufficiently, and no relief that he could obtain by prevailing on an Eighth Amendment theory would be different from or additional to that obtainable under his other approaches. No purpose would therefore be served by discussing whether the complaint also states a claim under the Eighth Amendment.