**Keith LESLIE, Plaintiff,**

v.

**William DOYLE, et al., Defendants.**

**No. 93 C 7513.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 23, 1994.

---

Stephen D. Libowsky and Orrin S. Shifrin, Katten Muchin & Zavis, Chicago, IL, for plaintiff.

Sebastian N. Danziger, Atty. Gen., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Joliet Correctional Center ("Joliet") inmate Keith Leslie ("Leslie") brings this action under 42 U.S.C. § 1983 ("Section 1983"), contending that three Illinois Department of Corrections employees violated his Eighth Amendment[1] right against cruel and unusual punishment and his Fourteenth Amendment right to due process of law. All defendants have moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss the Complaint for failure to state a cause of action. For the reasons stated in this memorandum opinion and order, their motion is granted in principal part and denied as to the remainder.

*Procedural Background*

Leslie tendered his initial Complaint (including several exhibits) pro se, describing unrelated run-ins with Superintendent William Doyle ("Doyle") at Joliet on May 24, 1993 and with Health Care Unit Administrator Marlene Guthrie ("Guthrie") at Hill Correctional Center ("Hill") in early August 1993. After this Court conducted its customary threshold review for non-"frivolousness" in the legal sense defined in *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) and refined in *Denton v. Hernandez,* —— U.S. ——, ——, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992), it granted leave to file the Complaint in forma pauperis and appointed counsel to represent Leslie.

■ Appointed counsel then prepared, and this Court granted leave to file, a Verified and Amended Complaint ("AC") that added a third defendant, Hill's Chief Administrative Officer Jerry Gilmore ("Gilmore"), and set out four counts bearing these labels:

I. Cruel and Unusual Punishment as to Doyle;

II. Substantive Due Process as to Doyle;

III. Cruel and Unusual Punishment as to Guthrie and Gilmore;

and

IV. Deprivation of Personal Property as to Guthrie and Gilmore.

Although the AC did not physically attach a set of the exhibits that had accompanied the original Complaint, it referred to (AC ¶¶ 24, 33, 46) and quoted from (AC ¶¶ 25, 27, 29, 35–36, 53–54) those documents. They may be considered in deciding the motion to dismiss (*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 739 n. 12 (7th Cir.1986); *Griswold v. E.F. Hutton & Co.,* 622 F.Supp. 1397, 1402–03 (N.D.Ill.1985); cf. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)), and this Court has done so.

---

1. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the Bill of Rights' underlying substantive provisions (which of course impose direct limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and

## Leslie's Allegations [2]

One of Leslie's sets of claims arises out of the facts that on May 24, 1993 Doyle placed Leslie in segregation "for absolutely no reason at all" [3] and then filed a false disciplinary report charging Leslie with dangerous disturbance, insolence, disobeying a direct order and assault. On May 28 Leslie appeared before the Adjustment Committee and was found guilty of insolence and disobeying a direct order and committed to 15 days' segregation with credit for time served. Leslie spent the 15 days in segregation. In July 1993 Leslie filed a grievance report that resulted in the expunction of the disciplinary report and in his receiving $5.10 in compensation.

Leslie's other claims are predicated on events stemming from the fact that his left leg is paralyzed from the knee down. Despite that physical impairment Leslie was able to function as a prison porter and play a form of basketball. On August 2, 1993 Leslie was in the Hill gym shooting free throws. Word got back to Guthrie, who had Leslie's personal cane confiscated. Next day Leslie was provided with a replacement cane from the prison stores.

Later in August Guthrie and Gilmore placed Leslie on sports restriction, a status that he occupied on-and-off for approximately two months. While on restriction Leslie could not shoot baskets, play in the yard or use exercise machines located in the prison gym.

Leslie filed several grievance reports in an effort to have his personal cane returned and to obtain a property slip authorizing him to keep it. Though Leslie's own cane was ultimately returned to him on an unspecified date, no property slip has been issued.

## Count I

Leslie first claims that Doyle subjected him to cruel and unusual punishment by placing him in segregation for no reason at all. Even with the benefit of favorable inferences, that claim fails as stated—but it survives in a different guise.

■ There is nothing cruel or unusual about segregation per se. In Illinois any notion of cruelty tends to be negated by the statutory prohibition (among other things) of corporal punishment and disciplinary measures directed at diet, medical or sanitary facilities, clothing, bedding, mail or access to legal materials (730 ILCS 5/3–8–7(b)(1)). But even were that not the case, any notion that segregation could be classified as an "unusual" punishment is entirely unpersuasive. It has always been understood that one of the primary means (and surely a reasonable means) of exercising control over a potentially unruly prison population is to isolate dangerous or threatening members of the community.

■ To avoid abuse of the practice of imposing segregation, Illinois provides for prompt review of the initial decision to commit, with meaningful participation by all interested parties including the inmate (730 ILCS 5/3–8–7(c) and 5/3–8–8; 20 Ill.Admin.Code ("Code") §§ 504.50 to 504.150). State procedures must comport with due process (*Wolff v. McDonnell*, 418 U.S. 539, 555–58, 94 S.Ct. 2963, 2974–76, 41 L.Ed.2d 935 (1974)), and what Illinois has established meets that standard. Conditions of confinement in segregation are likewise governed by state statute (730 ILCS 5/3–7–2) and regulation (Code § 504.620) that fit within the framework of the constitutionally mandated minimum (*Hutto v. Finney*, 437 U.S. 678, 685, 98 S.Ct. 2565, 2570–71, 57 L.Ed.2d 522 (1978)). Absent some challenge to the conditions of confinement, then, it is difficult to see how temporary confinement in segregation could constitute cruel and unusual punishment.

has been construed to embody such Bill of Rights guaranties).

**2.** What follows is an account that credits Leslie's well-pleaded allegations with the required reasonable inferences (*Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992)).

**3.** That was the language of Leslie's original pro se Complaint. After having set out the factual scenario, AC ¶ 38 employs the less colorful (more lawyerlike?) locution that Leslie was "arbitrarily, and unnecessarily placed in segregation without any justifiable basis."

■ Leslie seeks to avoid that result by characterizing his 15 day confinement as "grossly disproportionate" to the underlying offense, thus invoking the Eighth Amendment principle—long ago recognized in *Weems v. United States,* 217 U.S. 349, 367–82, 30 S.Ct. 544, 549–55, 54 L.Ed. 793 (1910) and more recently reaffirmed in *Solem v. Helm,* 463 U.S. 277, 284–90, 103 S.Ct. 3001, 3006–10, 77 L.Ed.2d 637 (1983)—that a sentence grossly disproportionate to the crime committed constitutes cruel and unusual punishment.[4] At least in the past, our Court of Appeals has applied the proportionality principle outside of the sentencing context to find that prolonged segregation for a minor infraction constituted cruel and unusual punishment (*Chapman v. Pickett,* 586 F.2d 22, 27–28 (7th Cir.1978); see also *Adams v. Carlson,* 488 F.2d 619, 634–36 & n. 32 (7th Cir. 1973)[5]).

Here Leslie argues that because he had done *nothing* wrong, 15 days of segregation necessarily constituted grossly disproportionate punishment—effectively an argument that in ratio terms any level of punishment is infinitely greater than a nonexistent offense. But in terms of the decided case law in the prison context, all that the proportionality guaranty has protected against have been far more prolonged commitments to segregation representing extreme deprivations that are unjustified by the underlying offense (*Chapman,* imposing 7 months for refusing to handle pork for religious reasons); *Adams,* imposing 11 months for work stoppage). In fact, *Madyun v. Franzen,* 704 F.2d 954, 961 (7th Cir.1983) has put the matter this way in speaking of a 15–day segregation period:

> Unconstitutional disproportionality of punishment, however, generally requires punishment far more severe than 15 days in segregation, usually for offenses less dangerous than refusal to submit to a search.

That sort of minimalist approach would seem to be fortified by the Supreme Court's most recent discussion, in which two Justices (Scalia with Chief Justice Rehnquist in agreement) expressed an interest in abolishing the guaranty altogether (*Harmelin,* 501 U.S. at 961–94, 111 S.Ct. at 2684–2701), while three other Justices (Kennedy with O'Connor and Souter in agreement) joined in an opinion that repeatedly characterized the doctrine as "narrow" (*id.* at 996–1001, 111 S.Ct. at 2702–05). And the adjective "narrow" surely fits the application of the rule in such cases as *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

This Court has no desire, of course, to condone purely vindictive measures by those in positions of power. But as the discussion to this point reflects, the case law teaches that the vehicle to deal with such a problem, at least in terms of the alleged imposition of short-term periods of segregative confinement, is not via the Eighth Amendment's proportionality principle.

■ Indeed, it is worth noting (although Doyle has not raised, and therefore may well have waived, the issue) that given the state of the case law, the doctrine of qualified immunity would appear to apply to any damages claim based on an asserted Eighth Amendment violation through the imposition of short-term segregative confinement. Surely at the time that Doyle acted the asserted right cannot be said to have been "clearly established" in the sense defined in *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Having said all of that, however, this Court still cannot grant Doyle's motion to dismiss Count I. That result can obtain "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (*Hi-*

---

**4.** That constitutional guaranty of proportionality came under attack in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). But only Chief Justice Rehnquist joined in the view expressed by Justice Scalia that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee" (*id.* at 965). As *United States v. Contreras,* 937 F.2d 1191, 1195 n. 3 (7th Cir.1991) has since recognized, a "firm majority of the Court" in *Harmelin*

found the Eighth Amendment's proportionality guaranty still viable—though its scope (in any real world terms) may be open to serious question.

**5.** There is of course considerable doubt whether decisions of that vintage remain reliable indicia of the likely views of the same court today.

**1044**

*shon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). And because that principle applies "even if [a complaint] points to no legal theory or even if it points to the wrong legal theory as a basis for [a] claim" (*Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1134 (7th Cir.1992); accord, *NAACP v. American Family Mutual Ins. Co.,* 978 F.2d 287, 292 (7th Cir.1992)), this Court must properly look to other potential sources of recovery under Leslie's allegations. In this instance the Fourth Amendment, with its prohibition against unreasonable seizures, fills the bill.

■ Inmates do not check their constitutional rights at the prison gate (*Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)), and that includes the retention of "some Fourth Amendment rights upon commitment to a correctional facility" (*Bell v. Wolfish,* 441 U.S. 520, 558–60, 99 S.Ct. 1861, 1884–85, 60 L.Ed.2d 447 (1979)).[6] To be sure, there have been suggestions in some Seventh Circuit decisions that postconviction confinement forces a prisoner to shift his or her focus from the Fourth Amendment to the Eighth Amendment for asserting any constitutional claims (e.g., *Titran v. Ackman,* 893 F.2d 145, 147 (7th Cir. 1990); *Wilkins v. May,* 872 F.2d 190, 192–93 (7th Cir.1989); *Williams v. Boles,* 841 F.2d 181, 183 (7th Cir.1988))—but those statements have been made in a very different context from the present one, and of course they cannot in any event override what was said in *Bell.* Although custody in prison is by definition an entirely reasonable "seizure" of a convicted felon (if it may be termed a "seizure" at all in that sense), it may fairly be argued that the constitutional right to be free from unreasonable seizures (the Fourth Amendment right) embraces an inmate's entitlement not to be subjected to a major further limitation on his liberty—a commitment to segregation—on the mere whim of a correctional officer (for no penological purpose at all).

*Count II*

Although Doyle must therefore remain a defendant in any event, the pending motion still necessitates a look at the second basis advanced by Leslie's counsel for recovery against Doyle. In that respect Leslie claims that by arbitrarily placing him in segregation Doyle violated Leslie's right to substantive due process as guaranteed by the Fourteenth Amendment.

■ *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983) teaches that the Due Process Clause alone does not create a liberty interest in remaining in the general prison population. Nonetheless state statutes and regulations *may* give rise to such an interest—and if so, the Clause does protect that interest (*id.* at 470–71, 103 S.Ct. at 870–71; *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461, 109 S.Ct. 1904, 1908–09, 104 L.Ed.2d 506 (1989)). To find that the state has created a liberty interest, the court must conclude that the statute or regulation at issue uses "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed and that administrative segregation will not occur absent specified substantive predicates" (*Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871 (footnote reference omitted); see also *Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910).

■ In this instance the relevant Illinois Department of Corrections regulation (Code § 504.40(a)) provides (emphasis added):

The shift supervisor shall determine whether or not it is necessary to place the committed person in investigative status or in temporary confinement status pending a disciplinary hearing or a determination whether or not to issue a disciplinary or investigative report in accordance with Section 504.30. The decision to place a committed person in temporary confinement *may* be based, *among other matters,* on:

   1. The aggressiveness of the committed person;

---

**6.** Although *Bell* and a number of other cases have spoken in the context of unreasonable *searches,* there appears to be no principled reason that the *seizures* provision of the Fourth Amendment could not be implicated as well.

2. The threat posed to the safety and security of the facility;

3. The need to restrict the committed person's access to general population to protect him from injury or to conduct the investigation; and/or

4. The seriousness of the offense.

That language is even farther from being "unmistakably mandatory" than a prior incarnation of the same regulation that was held by our Court of Appeals *not* to have created a liberty interest in remaining in the general population (*Woods v. Thieret*, 903 F.2d 1080, 1082–83 (7th Cir.1990) (per curiam)).[7] Hence Leslie cannot predicate a due process argument on Illinois state law.

Because Leslie thus had no liberty interest in remaining in the general population, he cannot prevail on his Count II claim that Doyle deprived Leslie of his Fourteenth Amendment right to substantive due process by placing him in temporary segregative confinement. And that means that Leslie has only one string to his bow as against Doyle: that identified in the *Count I* section of this opinion.

### Count III

Leslie next shifts to the other series of events related in the *Leslie's Allegations* section of this opinion. In that respect Leslie first claims that Gilmore and Guthrie violated the Eighth Amendment's prohibition of cruel and unusual punishment (1) by replacing Leslie's personal cane with one supplied from prison stores and (2) by placing Leslie on sports restrictions.

■ In the last two Terms, two cases—*Helling v. McKinney*, —— U.S. ——, ——, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993) and *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994)—have reconfirmed and then expanded

upon the two essential elements for inmate challenges to their conditions of confinement under the Eighth Amendment: They must demonstrate a prison official's (1) deliberate indifference (2) to a substantial risk of serious harm. That first element is subjective in that it turns on the official's state of mind (*id.* at ——, ——, 114 S.Ct. at 1977, 1979), while the second is objective and poses two interrelated questions: (a) whether the inmate has been exposed to a serious risk of harm and (b) whether exposure to that risk violates contemporary standards of decency (*Helling*, —— U.S. at ——, 113 S.Ct. at 2482).[8]

■ In the more specialized context of allegedly deliberate indifference to serious medical needs (*Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)), the case law has pricked out the line between medical situations that are grave enough to warrant relief under the Cruel and Unusual Punishment Clause and those that are not. Thus inmates who have alleged such matters as the deliberate nontreatment of broken bones for 9½ months resulting in permanent deformities (*Tucker v. Randal*, 948 F.2d 388, 391 (7th Cir.1991)) or delays in the removal of sutures so that an incision oozed a "prurient, bloody, foul smelling drainage" (*Eades v. Thompson*, 823 F.2d 1055, 1058, 1060–61 (7th Cir.1987)) have been held to have suffered constitutionally insufficient attention to their serious medical needs. By contrast, this Court has found inmates who have complained of such inattention as the lack of preventive dental care (*Rial v. McGinnis*, 756 F.Supp. 1070, 1073 (N.D.Ill. 1991) and *Jackson v. Lane*, 688 F.Supp. 1291, 1291–92 (N.D.Ill.1988)) or the failure to treat a dry skin condition (*Sloan v. Lesza*, 1994 WL 571667, 1994 U.S.Dist. LEXIS 14701, at

---

7. *Woods* emphasized the discretion left with the shift supervisor and then with the Reviewing Officer under Code § 504.50(b). That discretion-conferring language has been preserved in the current version of the same section.

8. To illustrate the operation of that second (objective) branch of the inquiry, it is well established that double celling—the practice of placing two inmates in one cell—does not as such

constitute cruel and unusual punishment (*Rhodes v. Chapman*, 452 U.S. 337, 347–50, 101 S.Ct. 2392, 2399–2401, 69 L.Ed.2d 59 (1981)). But *Helling*, —— U.S. at ——, 113 S.Ct. at 2481–82 has now held that the result may well be different where a plaintiff complains of having been saddled with a cellmate who is known by the prison authorities to smoke five packs of cigarettes per day.

**1046**

*5 (N.D.Ill. Oct. 13)) have not reached the constitutional threshold.

Leslie's claim that he suffered from having to use a cane not of his own choosing surely falls squarely within the later category. Nothing in his allegations suggests that Leslie's health was impaired by his having to navigate with the cane that was provided to him. Any contention that depriving an inmate of his choice in canes constitutes cruel and unusual punishment is wholly without merit.

■■■■ As for the other facet of Leslie's Count III claim, there is another subset of Eighth Amendment cases—those involving deprivation of exercise—that is exemplified by the statement in *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985):

> Lack of exercise may certainly rise to a constitutional violation. Where movement is denied and muscles are allowed to atrophy, the health of the individual is threatened and the state's constitutional obligation is compromised.

In this area the location of the line of demarcation is a difficult task, for several quite severe restrictions on exercise have been upheld against constitutional attack (e.g., *Caldwell v. Miller,* 790 F.2d 589, 600 (7th Cir. 1986)) (one month suspension of *all* indoor and outdoor recreation, followed by six months of one hour per day of indoor exercise only). And where inmates complain that cell confinement deprives them of the opportunity to exercise in the prison yard or other open space, a distinction has been drawn between exercise as such (to which an inmate has a constitutional right) and yard or recreational time (to which an inmate does not), with the result that no constitutional violation has been found where an inmate was free to jog in place or to do push-ups in his cell during a 28 day stay in segregation (*Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir. 1988)) or to use an exercise bike while awaiting trial (*Shelby County Jail Inmates v. Westlake,* 798 F.2d 1085, 1089 (7th Cir.1986)). Only last week *Sellers v. Henman,* No. 93–1485, —— F.3d ——, ——–——, 1994 U.S.App. LEXIS 32913, at *3–*4 (7th Cir. Nov. 18) has reconfirmed the limited role that the Eighth Amendment plays in this area.

Thus Leslie's Count III claim, one asserting that on-again-off-again sports restrictions over the course of a couple of months constituted cruel and unusual punishment, fails to urge anything more than a constitutionally valid deprivation of yard or recreational time. Leslie remained free to exercise in his cell, and he does not claim to have been restricted in his duties as a porter. Given those reasonable substitutes for the opportunities that could have been provided in the yard and gym to maintain his health and to rehabilitate his leg during the relatively short periods of restriction, Leslie has pleaded no Eighth Amendment violations by either Guthrie or Gilmore.

*Count IV*

■■■■ Finally Leslie claims that the temporary seizure of his personal cane and the failure of Gilmore and Guthrie to provide a property slip violated his Fourteenth Amendment right not to be deprived of personal property without due process. That claim founders for the most fundamental of reasons: its failure to find a place in the language of the Due Process Clause.

By its very terms a violation of that clause must not only involve a deprivation of property (or liberty) but such deprivation must also have been marked by the absence of due process of law. Hence *Hudson v. Palmer,* 468 U.S. 517, 530–36, 104 S.Ct. 3194, 3202–05, 82 L.Ed.2d 393 (1984) teaches that the Due Process Clause is not implicated even where a prison official intentionally deprives a prisoner of property, so long as the state provides a meaningful postdeprivation remedy. And as for Leslie's complaint about the failure to provide a property slip, that does not itself amount to a deprivation of property—it is only if and when the absence of such a slip translates into taking the property away that a deprivation occurs.

In this instance Illinois expressly recognizes the common law tort of conversion (see, e.g., *Runnemede Owners, Inc. v. Crest Mortgage Corp.,* 861 F.2d 1053, 1060 (7th Cir. 1988), *Wasleff v. Dever,* 194 Ill.App.3d 147, 157–58, 141 Ill.Dec. 86, 93, 550 N.E.2d 1132,

1139 (1st Dist.1990) and numerous cases cited in both of those decisions). Because Leslie has such a state postdeprivation remedy, he cannot bring his Count IV claim under Section 1983 (see, e.g., *Starks v. Roth,* 1991 WL 222174, 1991 U.S.Dist. LEXIS 15129, at *3-*4 (N.D.Ill. Oct. 21); *Slaughter v. Anderson,* 673 F.Supp. 929, 930 (N.D.Ill. 1987)).

### Conclusion

Leslie has failed to state a claim against either Gilmore or Guthrie, both of whom are dismissed as defendants (thus causing the dismissal of AC Counts III and IV). AC Count II against Doyle is dismissed as well. But AC Count I survives (albeit as a Fourth Amendment claim), and Doyle is ordered to answer that remaining count on or before December 5, 1994. Accordingly the status hearing previously set for November 23, 1994 has been vacated, to be supplanted by a status hearing at 9:00 a.m. on December 13, 1994.