Keith LESLIE, Plaintiff–Appellant,

v.

William DOYLE, Defendant–Appellee.

No. 95–3130.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1996.

Decided Sept. 29, 1997.

Stephen D. Libowsky, Orrin S. Shifrin (argued), Katten, Muchin & Zavis, Chicago, IL, for Plaintiff–Appellant.

Jessie Wang–Grimm (argued), Office of the Attorney General, Chicago, IL, for Defendant–Appellee.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

This case raises disturbing questions about the nature and extent of the constitutional rights that protect state prisoners from the arbitrary and arguably lawless acts of state prison officials. The prisoner here, Keith Leslie, filed a lawsuit under 42 U.S.C. § 1983 against a correctional officer, William J. Doyle. The lawsuit alleged that Doyle falsely accused him of insolent conduct, thereby causing Leslie to be brought up on disciplinary charges and confined in disciplinary segregation for fifteen days. When a prison

administrative board reviewed the sanctions, it concluded that the charges had been baseless. The board cleared Leslie, but his exoneration came well after he had left segregation.

Leslie claimed that the officer's conduct and the ensuing punishment violated his federal constitutional rights. The district court ruled that no constitutional wrong had occurred: neither the Fourth Amendment, nor the Eighth Amendment, nor the Due Process Clause, proscribed the official conduct alleged here. The district court accordingly dismissed the case.

## I.

Leslie takes his appeal from two orders of the district court, one dismissing a portion of his complaint under Fed.R.Civ.P. 12(b)(6), and the other dismissing the remainder on summary judgment. Our account thus portrays Leslie's story in the most favorable light in order to see whether Leslie's allegations can sustain any cause of action under 42 U.S.C. § 1983. *Howlett v. Birkdale Shipping Co.,* 512 U.S. 92, 94, 114 S.Ct. 2057, 2061, 129 L.Ed.2d 78 (1994) (summary judgment); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (motion to dismiss).

In September 1992, an Illinois court sentenced Keith Leslie to three years for burglary and to ten years for an offense involving theft of motor vehicles. He was assigned to the Hill Correctional Center. In May 1993, Leslie was rehoused temporarily at the Joliet Correctional Center while he attended court proceedings nearby. At noon on May 24, Leslie returned to Joliet from his court appearance in the custody of Joe Carruthers and another correctional officer. In accordance with correctional procedure, Leslie's hands and feet were shackled. Although shackles would make movement awkward for anyone, they made movement particularly hard for Leslie because he has a partially paralyzed leg and must walk with a cane. With his hands and feet bound, he had to hold the cane's handle in the middle of his body while he kept its other end between his feet.

The correctional officers escorted Leslie to the first security checkpoint, and Carruthers asked William Doyle, an officer there, to authorize Leslie's entry. To verify Leslie's identity, Doyle asked Leslie to look at him and state his name and registration number. Leslie complied, but Doyle repeated the order, insisting that Leslie look directly at him. Leslie told Doyle that he was doing so and then repeated his name and registration number. Doyle let Leslie pass through a gate at the security checkpoint, and, as Leslie walked by him, Doyle grabbed Leslie's cane and shook it. Leslie responded by asking Doyle whether Doyle was trying to make him fall. Doyle ordered Leslie to proceed with Carruthers to the "shakedown room" where correctional officers search inmates who enter the prison through the security checkpoint.

Doyle was in the shakedown room when Leslie arrived. Although Leslie cooperated with the officers there, Doyle accused him of making trouble and ordered him to administrative segregation. After two days there, Leslie received notice that Doyle had charged him with disciplinary violations, including disobeying a direct order, making a dangerous disturbance, assault and insolence. According to the notice, Doyle had alleged that Leslie had refused to look at him and had argued with him at the security checkpoint and in the shakedown room, thereby creating a loud disturbance in each place.

The prison administration held a hearing on the charges and found that Leslie had disobeyed a direct order and been insolent. It reduced his grade for one month and sentenced him to fifteen days in disciplinary segregation. Leslie filed a grievance report with an administrative review board. In his report, he included witness statements from Carruthers and two other correctional officers present at his encounter with Doyle, who essentially said that Leslie had done nothing wrong. The review board decided that the charges had been baseless. In November 1993, it expunged the disciplinary report from Leslie's record, restored his grade and compensated him $5.10 for the prison wages he lost in segregation.

Leslie sued pro se under 42 U.S.C. § 1983. In July 1994, his court-appointed lawyers filed an amended complaint alleging that Doyle's conduct and Leslie's confinement in disciplinary segregation had violated his rights under the Eighth Amendment and under the substantive component of the Due Process Clause of the Fourteenth Amendment.[1] Doyle moved for dismissal, contending that Leslie had failed to allege a cognizable constitutional violation.

The district court largely agreed with Doyle's arguments, but with an important qualification. It ruled that Leslie's Eighth Amendment claim failed because fifteen days in disciplinary segregation was not such a serious punishment that it could be cruel and unusual. The district court also ruled that Leslie had not alleged an affected liberty interest that could uphold a substantive due process claim. Thus, according to the court, Leslie's claim derived from his being removed to disciplinary segregation; but, since Illinois prison regulations did not create a liberty interest in Leslie's remaining with the general prison population, the substantive due process claim necessarily foundered. The district court nonetheless did not dismiss the suit against Doyle. Leslie's allegations, it held, might support a claim that Doyle had illegally seized his person in violation of the Fourth Amendment. The district court ordered the parties to proceed with discovery on this issue. *Leslie v. Doyle*, 868 F.Supp. 1039 (N.D.Ill.1994) (*Leslie I*).

Before the case went to trial, however, the Supreme Court issued an opinion that the district court would treat as dispositive of the outstanding Fourth Amendment matter. The Court ruled that confinement in disciplinary segregation did not trigger a prisoner's liberty interest, unless the conditions of this confinement "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). The facts in *Sandin* were much like Leslie's: the *Sandin* prisoner had undergone 30 days of disciplinary segregation on baseless charges, but the Court denied that this confinement touched a liberty interest protected by the Fourteenth Amendment. *Id.* at 485–86, 115 S.Ct. at 2300–01. Doyle moved for summary judgment on Leslie's remaining Fourth Amendment claim. Despite its outspoken misgivings about the wisdom of *Sandin*, the district court viewed Leslie's action as a "straightforward application" of *Sandin*, and one fatal to his claim. *Leslie v. Doyle*, 896 F.Supp. 771, 774 (N.D.Ill.1995) (*Leslie II*). On August 9, 1995, the district court ordered the case dismissed, and Leslie appealed.

## II.

Leslie contends that, through one provision or another, the Constitution prohibits prison officials from confining inmates in disciplinary segregation without justification. He argues that this prohibition can be found in the Fourth Amendment and its ban on illegal seizures, in the Eighth Amendment and its ban on cruel and unusual punishment or in the Due Process Clause of the Fourteenth Amendment and its ban on the deprivation of liberty without due process.

The district court rejected all three contentions. Leslie believes that the court must have been wrong about at least one of these arguments. All of the district court's rulings involve questions of law, which we review de novo. *Conover v. Lein*, 87 F.3d 905, 906–07 (7th Cir.1996).

### A. Eighth Amendment claim

■ We first approach whether the district court erred in dismissing Leslie's claim under the Eighth Amendment. Leslie argues that it is cruel and unusual punishment to impose disciplinary sanctions on a prisoner who has not committed a disciplinary infraction—who, in Leslie's words, is punished "for absolutely no reason at all." As Leslie would have it, a principle of proportionality regulates the imposition of any and all punishment, whether those measures are criminal sentences or disciplinary sanctions within a prison. According to this principle, every

---

1. Leslie's complaint also included claims against other prison officials on unrelated matters. The district court dismissed these claims, and Leslie does not appeal their dismissal. *See Leslie v. Doyle*, 868 F.Supp. 1039 (N.D.Ill.1994).

punishment must be proportional to the offense from whence it arises. This would hold true for even the smallest punishments. Hence Leslie's confinement in disciplinary segregation (and his reduction in grade) must offend the Eighth Amendment: the confinement, no matter how short, was necessarily disproportionate, because, as the review board found, Leslie had committed no offense at all.

■ We agree with Leslie that the Eighth Amendment embodies a principle of proportionality. *See Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *United States v. Contreras*, 937 F.2d 1191, 1195 n. 3 (7th Cir.1991). We also agree with Leslie that a punishment imposed for no offense at all is, as a matter of mathematics, disproportionate. But the Eighth Amendment does not mandate a precise formula applying to all punishment. *Harmelin*, 501 U.S. at 1001, 111 S.Ct. at 2705 (Kennedy, J., concurring); *see also Holman v. Page*, 95 F.3d 481 (7th Cir.1996). Before the proportionality principle can even be engaged, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2323–24, 115 L.Ed.2d 271 (1991)). For example, a prisoner would not have a claim of cruel and unusual punishment if a prison official literally slapped him on the wrist for no good reason. A brief stay in disciplinary segregation is, figuratively, a kind of slap on the wrist that does not lead to a cognizable Eighth Amendment claim. Our precedents hold that "[u]nconstitutional disproportionality of punishment ... generally requires punishment far more severe than 15 days in segregation, usually for offenses less dangerous than refusal to submit to a search." *Madyun v. Franzen*, 704 F.2d 954, 961 (7th Cir.1983); *see also Haines v. Kerner*, 492 F.2d 937, 942 (7th Cir.1974) (per curiam) (15 days' segregation).

### B. Fourth Amendment claim

■ Leslie next argues that he was illegally seized when he was confined in disciplinary segregation on the basis of false charges. Official action constitutes a seizure when it deprives a person of some meaningful measure of liberty to which he is entitled. *See Ford v. Wilson*, 90 F.3d 245, 248 (7th Cir.1996). The Fourth Amendment therefore applies to this case only if Leslie's confinement in disciplinary segregation affected such a liberty interest.

The district court took *Sandin* as controlling this question, and we agree. Framing the issue in terms of the Due Process Clause of the Fourteenth Amendment, the Supreme Court in *Sandin* considered whether confinement in disciplinary segregation deprives a prisoner of a liberty interest. *Sandin* did not settle the issue for all possible cases, but rather prescribed a standard for measuring deprivation. This standard turns on "the nature of the deprivation." *Sandin*, 515 U.S. at 493, 115 S.Ct. at 2304. The Due Process Clause grants prisoners a freedom from restraint, the Court explained, but that restraint must at least impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. at 2300. The prisoner in *Sandin* underwent disciplinary segregation for 30 days. In the Court's judgment, that level of restraint was too weak to invoke the Due Process Clause.

*Sandin* was a due process case, and here we are considering the Fourth Amendment's bar to unreasonable seizures. We see no reason, however, why a prisoner's liberty interest under these two provisions of the Constitution would differ. The district court therefore properly employed *Sandin* to determine whether Leslie had been "seized" by being confined in disciplinary segregation. Relying on its extensive experience in prisoner litigation, the district court took judicial notice of the conditions in disciplinary segregation in Illinois prisons. It thus determined that Leslie could not show that he had endured a significant and atypical hardship when he was subject to those conditions for fifteen days. *Accord Williams v. Ramos*, 71 F.3d 1246, 1249 (7th Cir.1995) (per curiam). We conclude that the district court did not err in concluding that Leslie could not, under any circumstances, show that he had been

deprived of the kind of liberty interest that the Fourth Amendment protects.

### C. Fourteenth Amendment claim (due process)

The Due Process Clause of the Fourteenth Amendment is the last (and most plausible) constitutional provision that Leslie invokes. The core of his claim is a person's right to be free from the willful abuse of power. Leslie describes this legal theory in terms of procedural due process, suggesting that a prison official undermines prison disciplinary standards when he knowingly makes a baseless charge of disciplinary violations and thereby effects the undeserved imposition of disciplinary sanctions. He has a point, but we understand his claim in a different way. Due process principles do pertain to such lawless conduct by officials, but the abuse of discretionary authority is usually analyzed under principles of *substantive* due process. *See Washington v. Glucksberg,* —— U.S. ——, ——, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 151–52, 82 L.Ed. 288 (1937) (describing this kind of liberty as the personal immunity "implicit in the concept of ordered liberty")); *Poe v. Ullman,* 367 U.S. 497, 542–43, 81 S.Ct. 1752, 1776–77, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting) (describing this liberty as freedom from "arbitrary impositions and purposeless restraints"). Leslie's case is really about an instance of malicious prosecution. *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952) (defining an affront to due process as conduct that "shocks the conscience" and "offend[s] even hardened sensibilities"). His allegations, if proven, could lead to the conclusion that Doyle initiated and pursued his prosecution for disciplinary infractions despite knowing that Leslie had not, in fact, committed any infractions at all. A malicious prosecution claim does not in general relate to a person's interest in being free from official custody; rather it pertains to a person's interest in not being the subject of arbitrary authority. This kind of official conduct involves the willfully illegal exercise of discretion, and it may implicate substantive due process because it affects the individual's right to be free of the abuse of power. *See Rochin,* 342 U.S. at 172, 72 S.Ct. at 209–10; *Black v. Lane,* 22 F.3d 1395, 1403 (7th Cir. 1994); *see also Cale v. Johnson,* 861 F.2d 943, 949 (6th Cir.1988); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988).

Leslie, however, is a prisoner. We know that when a prisoner enters the warden's custody, the state does not strip bare his right to be free of the arbitrary and purposeless use of authority. *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). We also know that the purpose of incarceration, not to mention the practical dictates of confining typically rough and unruly people against their will, circumscribes a prisoner's rights against the abuse of power more tightly than a free man's or woman's. *Hudson v. Palmer,* 468 U.S. 517, 524, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984). Where this leaves us is not entirely clear. One strand of law seems to hold that procedural due process, not its substantive sibling, is the proper avenue for a prisoner to vindicate his or her freedom against the "arbitrary actions of prison officials." *Hanrahan v. Lane,* 747 F.2d 1137, 1140 (7th Cir. 1984) (per curiam); *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986). On this theory, if the prisoner received the notice and opportunity to be heard due under the Constitution, then even an official's bringing charges rooted solely in malevolence would not give rise to a claim of substantive due process. It is perhaps doubtful whether this formula would serve a court well on facts as extreme as those in *Burton v. Livingston,* 791 F.2d 97 (8th Cir.1986). There a guard, out of unmitigated malice, "pointed a lethal weapon at the prisoner, cocked it, and threatened him with instant death." *Id.* at 100. In a case like that, a court might declare a substantive due process violation that no subsequent procedural fairness could obscure or heal. *Id.* at 101 (apparently finding substantive due process violation).

Another strand turns to the Eighth Amendment. When a prisoner challenges the constitutionality of official action taken in the name of prison security as an instance of excessive and unjustified use of force, this theory states that his rights of substantive

due process reduce to the cruel-and-unusual protection of the Eighth Amendment. *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986); *Meriwether v. Faulkner,* 821 F.2d 408, 415 (7th Cir. 1987). Prison officials can effect cruel and unusual punishment when they deliberately abuse their power, without regard to legitimate punitive purposes, in a calculated effort to harass inmates. Thus, as the Supreme Court has ruled, prisoners who allege that they have been the victims of an official's abuse of power would have to bring a claim under the Eighth Amendment. *Hudson,* 468 U.S. at 530, 104 S.Ct. at 3202; *Johnson v. Phelan,* 69 F.3d 144, 147 (7th Cir.1995), cert. denied, *Johnson v. Sheahan,* — U.S. —, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996); *Williams v. Boles,* 841 F.2d 181, 183 (7th Cir.1988). As we stated above, the Eighth Amendment is a losing argument for Leslie. Broadly speaking, the Constitution does not create a cause of action for arbitrary and purposeless acts by officials per se, *but cf. Burton,* 791 F.2d at 100; it prohibits the abuse of power that effects a *significant* deprivation. *See Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977. Leslie's deprivation—15 days' disciplinary segregation and the reduction in grade—falls short of "shock[ing] the conscience." *Rochin,* 342 U.S. at 172, 72 S.Ct. at 209.

Whether equating the Due Process Clause and the Eighth Amendment makes sense in Leslie's case, however, is not easy to say. The Eighth Amendment forbids the infliction of cruel and unusual punishment. Yet as Judge Friendly and Judge Nelson have observed, the rubric of punishment is ill-suited to covering a vindictive and anarchic act by a prison official, whether it be physical assault by a guard, *Johnson v. Glick,* 481 F.2d 1028, 1032 (2d. Cir.1973) (Friendly, J.), a prison official's planting marijuana on an inmate, *Cale,* 861 F.2d at 952 (Nelson, J., concur-

ring), or a guard's malicious and unfounded initiation of a prosecution, as Leslie alleges here. Punishment implies that a penalty is "deliberately administered for a penal or disciplinary purpose, with the apparent authorization of high prison officials charged by the state with responsibility for care, control, and discipline of prisoners." *Glick,* 481 F.2d at 1032. Such was the kind of punishment delivered in *Whitley v. Albers,* where a prison guard wrongly shot a prisoner "during the course of [an] attempt to quell a prison riot." *Whitley,* 475 U.S. at 314, 106 S.Ct. at 1081. (*Whitley* in fact limits its equation of the Eighth Amendment and the Due Process Clause to "these circumstances." *Id.* at 326, 106 S.Ct. at 1087) The facts here, however, are quite different, and more like those before Judge Nelson and Judge Friendly. Assault, a frame-up or malicious prosecution is not an example of punishment in the sense of the Eighth Amendment—that is, unless we are to view our prisons as Hobbesian islands ruled only by cold, lawless power. Instead, as Judge Nelson counseled, we might look directly to the Due Process Clause, with the caveat that due process would only protect against acts and consequences grave enough to affect a liberty interest. *Cale,* 861 F.2d at 953–54. Perhaps a useful approach is to say that a frame-up or malicious prosecution is in and of itself an inchoate breach of substantive due process, which matures into a viable claim if the consequences are sufficiently severe.[2]

We do not try today to sort out this bog of legal theories. Under any of them, Leslie's claim would seem to fail. Leslie apparently received adequate procedural due process (the review board did, after all, clear him of wrongdoing); the Eighth Amendment claim fails, as we have explained; and even if Leslie could maintain a claim of straight substantive due process, his deprivation did not impinge upon a liberty interest under *Sandin.*[3]

---

**2.** Another strand of substantive due process cases holds malicious prosecution actionable if in retaliation for exercise of a constitutional right. *See Franco v. Kelly,* 854 F.2d 584, 586 (2d Cir. 1988) (retaliation for prisoner's cooperation with an investigation of incidents of inmate abuse); *Cale,* 861 F.2d at 949; *but see Cale,* 861 F.2d at 951 (Nelson, J., concurring) ("a prison official ... surely [has] no authority to cause illegal

drugs to be planted on the person of a prison inmate for any purpose at all, retaliatory or otherwise."). But retaliation does not seem to be implicated in the case before us.

**3.** Even under pre-*Sandin* law the district court thought Leslie had no substantive due process claim. The now-superseded *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675

## III.

Leslie therefore has failed to allege or present facts that would support a claim under the U.S. Constitution. We do not say that Leslie suffered no wrong, at least in the light with which we must view the facts. It is wrong for an official of the state to exercise force against a citizen subject only to his mood or whim, whether that citizen is free or imprisoned. Not every wrong committed under color of law, however, is offered redress by the Constitution; and the wrong allegedly dealt to Leslie was not so grave as to provoke its intervention.

AFFIRMED.

(1983), directed the district court's attention to whether Illinois law created a liberty interest in remaining with the general population of prisoners. The district court decided that Illinois law had not. *Leslie I,* 868 F.Supp. at 1045.