In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3900

DARYISE L. EARL,

*Plaintiff-Appellant,*

*v.*

RACINE COUNTY JAIL, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 10-C-0247—**Lynn Adelman**, *Judge.*

SUBMITTED MAY 9, 2013[*]—DECIDED MAY 28, 2013

Before FLAUM, SYKES, and TINDER, *Circuit Judges.*

PER CURIAM. Daryise Earl, a Wisconsin inmate, appeals the district court's grant of summary judgment for the Racine County Jail and various jail officers in his suit under 42 U.S.C. § 1983, contending that the jail

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

(1) denied him due process by placing him on suicide watch without providing notice or a hearing and (2) was deliberately indifferent to an allergic reaction he suffered when forced to wear suicide-proof garments. We affirm.

The facts of Earl's case, construed in his favor, *see Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013), show that after he was convicted of first-degree intentional homicide and jailed, he was placed for five days onto "suicide watch"—protective segregation where he was allowed limited possessions, dressed in a "suicide-proof gown," served meals on Styrofoam trays, kept in continuous light for the first 24 hours, and closely and constantly monitored by prison staff. The jail says that Earl's placement on suicide watch was a matter of policy; this placement is required of every inmate convicted of a serious felony and lasts until he is examined by a mental-health expert and cleared for release into the general prison population. Earl, however, stated in an affidavit that he was placed on suicide watch as punishment after an officer relayed false information that he had threatened other guards.

While on suicide watch, Earl suffered an allergic reaction to the special gown he had to wear and requested medical attention. An officer called a nurse, who came and immediately examined him but found no rash. The nurse gave Earl medicine and cream but told the guards that he could continue wearing the gown. Two days later a mental-health worker recommended that Earl be discharged from suicide watch; but rather than being placed in the general population, Earl was

placed for twelve days in administrative segregation, apparently as punishment for initially refusing to wear the suicide gown, and afterwards was transferred to a state prison. Two years later Earl returned to the jail for seven days for a court appearance and again was housed in administrative segregation rather than in the general prison population. He then brought this suit.

The district court granted the defendants' motion for summary judgment. First, the court concluded that, to the extent Earl's due-process claim involves his time in administrative segregation, his placement there was too short to deprive him of a liberty interest. And to the extent his claim concerned his five days on suicide watch (a more restrictive form of confinement), the court found these conditions neither "unusually harsh" nor sufficiently long to affect a liberty interest. Even if his placement on suicide watch affected a liberty interest, the court added, Earl did not contend that the policy was unconstitutional. As for Earl's deliberate-indifference claim, the court concluded that he produced no evidence suggesting that any of the defendants (1) delayed responding to his call while on suicide watch that he was suffering an allergic reaction or (2) acted maliciously by deferring to the nurse's medical judgment regarding his treatment.

Earl then moved to alter the judgment, *see* FED. R. CIV. P. 59(e), attaching new affidavits from former inmates who asserted that they had also been convicted of serious felonies but were never placed on suicide watch. The district court stated that it stood by its original decision and denied Earl's motion.

On appeal, Earl first argues that summary judgment should not have been granted because a triable issue of fact exists regarding the jail's reason for putting him on suicide watch. He insists that his affidavit, asserting that he was placed on suicide watch for threatening the guards, contradicts the defendants' affidavits stating that he was placed on suicide watch for his own protection.

Regardless of why Earl was placed on suicide watch, the district court correctly determined that no liberty interest was implicated by his placement there. When an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation like suicide watch or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time. *See Wilkinson v. Austin*, 545 U.S. 209, 223 (2005); *Sandin v. Conner*, 515 U.S. 472, 484-87 (1995); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 & n.2 (7th Cir. 2009); *Townsend v. Fuchs*, 522 F.3d 765, 771-72 (7th Cir. 2008). The conditions Earl faced on suicide watch were more restrictive than ordinary prison life, but—as the district court found—they were not "unusually harsh." *See Marion*, 559 F.3d at 698. For example, the only changes to meals were the trays upon which food was served (Styrofoam rather than plastic) and the quick removal of the eating utensil after each meal; inmates were not denied bedding but were given a mattress (or two if available) and a "suicide-proof" blanket;

inmates were denied writing materials for only the first 48 hours as a precautionary measure; and rather than prohibiting human contact, deputies were assigned to closely and personally monitor the inmates to ensure their safety. Courts have deemed an inmate's liberty interest implicated only where the conditions are far more restrictive. *See, e.g.*, *Wilkinson*, 545 U.S. at 223-24 (inmate denied human contact and subjected to lights during every hour of confinement); *Gillis v. Litscher*, 468 F.3d 488, 490-91, 493-94 (7th Cir. 2006) (inmate in "Behavioral Modification Program" denied any bedding or clothing and deprived of nearly all human contact or sensory stimulation); *Westerfer v. Snyder*, 422 F.3d 570, 589 (7th Cir. 2005) (inmate subjected to severe limitations on contact with others, showers, exercise, attorney visits, and access to personal property). In addition to the conditions of Earl's suicide watch being insignificantly harsh, they also were brief: he was placed on suicide watch for only five days, which generally is too short a time to trigger due-process protection. *See Marion*, 559 F.3d at 697-98 & nn.2-3 (collecting cases holding that segregated confinement of 2 to 90 days does not implicate liberty interest); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (concluding that up to 90 days in segregation does not affect liberty).

Insofar as Earl challenges his placement in administrative segregation, his argument falls short for the same reasons: his time in segregation was too short to affect his liberty, and he did not point to any conditions of administrative segregation that were any worse than general prison conditions.

Earl also maintains without elaboration that the officer who called the nurse and other officers who refused to allow him to remove the suicide garments were deliberately indifferent to his allergic reaction. But Earl does not dispute the district court's findings that after he told the officer about his allergic reaction to the suicide gown, the officer called a nurse, who immediately examined him and gave him cream and medication. Even if we assume that Earl's allergic reaction was a "serious medical condition," the officer's prompt call to the nurse undermines any suggestion that he acted with the reckless or malicious intent required to sustain a deliberate-indifference claim. *See Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994); *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010). Moreover, as the district court concluded, the nurse informed the officers that because she did not find any evidence of a rash or bumps, Earl did not need different garments, and the officers appropriately deferred to that medical decision. *See Knight v. Wiseman*, 590 F.3d 458, 465 (7th Cir. 2009); *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008).

AFFIRMED.