In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2856

MAURICE HARDAWAY,

*Plaintiff-Appellant,*

*v.*

BRETT MEYERHOFF, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:10-cv-00556-JPG-PMF — **J. Phil Gilbert**, *Judge.*

ARGUED SEPTEMBER 20, 2013 — DECIDED NOVEMBER 4, 2013

Before WOOD, *Chief Judge*, and BAUER and FLAUM, *Circuit Judges.*

BAUER, *Circuit Judge*. In 2009, Menard Correctional Center inmate Maurice Hardaway ("Hardaway") was charged with altering official electronics contract forms and selling or trading the counterfeit contracts in exchange for money and/or commissary. Although the charge was later expunged, Hardaway spent six months in segregation as part of the recommended punishment. Hardaway brought suit against

prison officials in the U.S. District Court for the Southern District of Illinois alleging the 182–day term spent in segregation was a violation of 42 U.S.C. § 1983 based on the denial of his liberty interests protected by the Fourteenth Amendment. The district court granted Defendants' motion for summary judgment on the grounds of qualified immunity. We affirm.

## I. BACKGROUND

On September 16, 2009, Maurice Hardaway received a disciplinary report completed by prison official Brett Meyerhoff ("Meyerhoff") charging the inmate with damage or misuse of property, forgery, and trading or trafficking of official electronics contract forms. Two days later, the Correctional Center disciplinary committee held a hearing to consider the charges against Hardaway and found him guilty. Hardaway claims that committee member Charles Parnell ("Parnell") denied him the opportunity to argue any defense at the hearing or even view the forged contracts that were used as evidence against him. The disciplinary committee's sentence included six months of disciplinary segregation, demotion to C-grade status, and revocation of commissary rights. Hardaway was then removed from his holding cell and relocated to a "six gallery cell" secured by a solid metal door. Due to a childhood incident when he was raped and abused by his grandparents, an experience Hardaway associates with closed solid metal doors, Hardaway requested to be moved to a cell with metal bars. Prison officials denied this request and kept Hardaway in the six gallery cell.

On September 20, 2009, Hardaway initiated a grievance process contending (1) that he knew nothing about the sale of

the electronics contracts, (2) the charge was based solely on information provided by a confidential informant, and (3) that the disciplinary report failed to state a specific time, place, or date of the alleged offenses. Additionally, Hardaway argued that Parnell denied him the opportunity to view the forged contracts or argue any defense during the disciplinary hearing. The grievance officer issued a summary report shortly thereafter finding Hardaway guilty of the charges and imposing the recommended disciplinary actions.

The next month, Hardaway filed a second grievance concerning the disciplinary report and proceedings that was considered by the Illinois Administrative Review Board ("ARB"). In December, the ARB recommended that Hardaway's disciplinary report be remanded so that Meyerhoff, the reporting officer, could add more specific information to substantiate the charges cited. Meyerhoff, however, failed to make any revisions to the report, so the ARB affirmed Hardaway's grievance on March 18, 2010. The ARB further concluded that the charge should be expunged from Hardaway's record on the grounds that the disciplinary report did not comply with the Department of Corrections Rule 504.30, which outlines proper procedures for disciplinary reports and hearings. Hardaway had already served his sentence of 182 days in segregation by the time the ARB affirmed his grievance. Nevertheless, he complains that during the entirety of his six-month segregation, he experienced mental anguish as a result of the solid metal door; was physically attacked by his cell mate; and was only released from his cell once per week to shower and use the prison yard.

Several months after his release from disciplinary segregation, Hardaway filed suit against Defendants Meyerhoff and Parnell claiming their acts and omissions led to his placement in disciplinary segregation for 182 days constituting a violation of due process. Hardaway argued that these acts and omissions caused him to endure "significant and atypical hardship" and that he suffered a "mental health issue" because he spent an "unwarranted" six months in segregation behind a large metal door. In an amended complaint, Hardaway further contended that Meyerhoff failed to observe the safeguards of due process by violating administrative regulations and failing to comply with the ARB's order to amend the disciplinary report. Defendants filed a motion for summary judgment contending that Hardaway did not have any protected liberty interest under the Fourteenth Amendment and that they were entitled to qualified immunity.

In February 2012, the Magistrate Judge issued a report denying Defendants' motion for summary judgment and recommended that the parties provide additional facts to determine whether Hardaway was deprived of a protected liberty interest. The district court ultimately granted Defendants' motion for summary judgment on the grounds that Meyerhoff and Parnell were entitled to qualified immunity because, at the time of Hardaway's confinement, there was no clearly established law that could have put Defendants on notice that such acts violate an inmate's due process rights. Hardaway timely appealed the district court's judgment.

## II. DISCUSSION

The Seventh Circuit reviews a district court's grant of summary judgment based on qualified immunity *de novo*, accepting all facts and inferences in a light most favorable to Hardaway, the non-moving party. *Elder v. Holloway*, 510 U.S. 510, 516 (1994); *Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997). The affirmative defense of qualified immunity protects government officers from liability for actions taken in the course of their official duties if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine if qualified immunity applies, the courts employ a two-prong test: (1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the officers violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Hardaway argues that the first prong should be addressed first, but the court has discretion to address either issue first, depending on the case at hand. *Pearson*, 555 U.S. at 236. The district court began its analysis with the second prong, deciding that the right for a prisoner not to be confined for six months in segregation was not clearly established at the time of the Defendants' conduct. We concur with the district court's decision.

This Court has noted that an inmate's liberty interest in avoiding segregation is limited. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an "atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In assessing whether disciplinary segregation amounts to a constitutional violation, this court looks to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Marion*, 559 F.3d at 697 (emphasis in original). Although relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest *may* arise from a long term of confinement combined with atypical and significant hardships. *See Marion*, 559 F.3d at 697–98 (citing *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Sandin*, 515 U.S. at 486). In *Marion*, this court noted that "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." 559 F.3d at 698 (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)) (internal quotations omitted). Since Hardaway's confinement was six months and one day in total, the duration of segregation alone is insufficient to rise to the level of a Fourteenth Amendment violation. Therefore, the court must address the conditions of Hardaway's confinement to determine if they were so extreme as to implicate due process considerations.

Hardaway argues that the conditions contained in the record that amount to "atypical and significant hardship" are his placement with a confrontational cell mate, the psychological issues he experienced in connection to his aversion to closed solid metal doors, and his weekly access to the shower and prison yard. As the district court correctly explained, "[t]he most that can be said for the jurisprudence existing in September 2009 regarding what presents an 'atypical and

significant hardship' is that it is not at all clear except at the fringes." For example, in *Wilkinson*, the Supreme Court found that prisoners' liberty interests will be implicated when they are placed in segregation that deprives them of virtually all sensory stimuli or human contact for an indefinite period of time. 545 U.S. 209, 214–15 (2005). Moreover, the court in *Wilkinson* concluded that it was all of the conditions combined that implicated due process rights and any of the conditions "standing alone might not be sufficient to create a liberty interest." *Id.* At 224. We realize that the Court was not implying that total deprivation of sensory stimuli and human contact is a requirement for "atypical and significant hardship." Nevertheless, that does not help Hardaway. None of the circumstances of Hardaway's confinement come close to the harsh conditions described in *Wilkinson*. Hardaway was not deprived of all human contact and was permitted to use the shower and prison yard once every week. While these conditions are more severe than those found in the general prison population, they are hardly analogous to a confinement that deprives a prisoner of all human contact or sensory stimuli. Even reviewing all facts in a light most favorable to him, Hardaway failed to demonstrate a deprivation of rights that could be considered "atypical and significant hardship."

In order to defeat the protection provided by qualified immunity, Hardaway bears the burden of identifying "case law that has both articulated the right at issue and applied it to the factual circumstance similar to the one at hand." *Boyd v. Owen*, 481 F.3d 520, 526 (7th Cir. 2007). Hardaway has not presented case law stating that a six-month period of confinement under conditions similar to Hardaway's implicates a

liberty interest. The most analogous case to Hardaway's is *Thomas v. Ramos* involving a prisoner who was placed in disciplinary segregation with another cell mate for seventy days without any access to the showers or prison yard. 130 F.3d 754, 757–8 (7th Cir. 1997). This Court found that the strongest argument in favor of the prisoner's claim for a deprivation of rights was that he was denied all opportunity to exit his cell for exercise, leading to a concern for his physical health. Nonetheless, this Court held that the inmate's segregation "did not result in an atypical and significant deprivation because the conditions he experienced did not greatly exceed what one would expect from prison life generally." *Thomas*, 130 F.3d at 762 (quoting *Williams v. Ramos*, 71 F.3d 1246, 1249 (7th Cir. 1995)) (internal quotations omitted). Although Hardaway's confinement was longer than the segregation in *Thomas*, he was allowed weekly access to the showers and prison yard, effectively eliminating any concern for his physical well-being in that respect. In short, Hardaway's conditions were not as harsh as those found in *Thomas* and are insufficient to implicate a liberty interest.

As Hardaway admits in his appeal, "there is ambiguity among various Seventh Circuit cases regarding the proper baseline against which to measure conditions of disciplinary confinement." Although the district court would benefit from a bright-line rule on the types of conditions and duration of segregation give rise to a prisoner's liberty interest, no such guidance has yet to be specifically addressed by this Court. Hence, even if Hardaway's segregation amounted to the violation of a liberty interest, the Defendants should not be held responsible for incorrectly guessing otherwise due to the

ambiguity of the parameters of the law. In sum, the right to avoid disciplinary segregation in a cell with a solid metal door and a confrontational cell mate for 182 days with weekly access to the shower and recreational yard was not a clearly established right in September 2009 when the conduct occurred. Therefore, the Defendants are entitled to qualified immunity.

### III. CONCLUSION

For the foregoing reasons, the order of the district court is AFFIRMED.