**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 21, 2018[*]
Decided February 21, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 17-1269

| | |
|---|---|
| EARNEST D. BEAMON, JR., <br> *Plaintiff-Appellant,* <br><br> *v.* <br><br> WILLIAM POLLARD, et al., <br> *Defendants-Appellees.* | Appeal from the United States District Court for the Eastern District of Wisconsin. <br><br> No. 15-CV-560 <br><br> William E. Duffin, <br> *Magistrate Judge.* |

**O R D E R**

Earnest Beamon, an inmate at Waupun Correctional Institution, was disciplined for possessing illicit materials. He sued various Waupun officials under 42 U.S.C. § 1983 asserting that he was disciplined without due process and in retaliation for submitting a grievance about the search of his prison cell. The district court entered summary judgment in favor of the defendants. We affirm the judgment.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Beamon's discipline stems from his possession of materials connected with the "Nation of Gods and Earths," sometimes referred to as the "Five Percent Nation," a movement that began in New York City in the 1960s after breaking away from the Nation of Islam. It teaches that white people are inherently evil and that black men are godly. The Wisconsin Department of Corrections considers it a "security threat group" and prohibits inmates from possessing materials related to its teachings. *See* WIS. ADMIN. CODE DOC § 303.20 (2006). In mid-2014 Beamon's mail and phone calls were monitored and his cell searched after the Waupun Gang Task Force received anonymous information that he possessed, and was disseminating, literature from the Nation of Gods and Earths. During the cell search, one prison officer found handwritten pages and letters that contained writings relating to the movement. Beamon tried to discuss this incident with the prison's security director, who told Beamon he could not comment on the issue. Beamon then submitted an inmate grievance, complaining that the search constituted harassment. Two days later Beamon was written up in a conduct report for possessing illicit materials. A disciplinary hearing was held, after which a hearing officer found Beamon guilty of group resistance and petitions, disrespect, possession of contraband, and violations of institution policies and procedures. Beamon was sanctioned with 270 days in disciplinary segregation, of which he served half.

Beamon then filed this lawsuit. He asserted that the defendants (the warden, the security director, the officer who issued the conduct report, and the hearing officer) violated the First Amendment by confiscating his religious materials and by retaliating against him for filing an inmate grievance. He also argued that defendants deprived him of due process under the Fourteenth Amendment by disciplining him without first providing adequate notice that his materials were prohibited.

The magistrate judge, presiding by consent, 28 U.S.C. § 636(c), entered summary judgment in favor of the defendants. With regard to Beamon's First Amendment claims, the judge found that the Department of Corrections's ban on these materials was rationally related to a penological interest. Beamon's retaliation claim failed, the judge added, because he could not demonstrate that the defendants had a retaliatory motive for disciplining him. As for the due-process claim, the judge pointed out that an officer had previously warned Beamon that he could be punished for possessing literature related to the Nation of Gods and Earths.

On appeal Beamon broadly challenges the magistrate judge's handling of his retaliation claim. But Beamon has not pointed to any evidence to suggest that his filing of a grievance motivated his being punished. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964

(7th Cir. 2012). As the magistrate judge found, only the hearing officer was aware of Beamon's grievance, and Beamon has not proffered any theory why his grievance would have motivated this defendant to discipline him. As for the remaining three defendants, no evidence hints that any of them even knew about Beamon's grievance, and we cannot infer retaliatory motive merely by the fact he was written up in a conduct report two days after filing a grievance. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008).

Beamon also challenges the rejection of his due-process claim and maintains that he did not receive adequate notice that his materials were prohibited. He says that the confiscated materials had been inspected and returned to him, so he assumed he was permitted to possess them. But Beamon's time in segregation was insufficient to deprive him of a protected liberty interest. *See Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005). Whether a liberty interest is implicated by disciplinary segregation depends on both the time and conditions of confinement, *see Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009), and 135 days in segregation—absent any atypical conditions related to confinement—does not violate the Fourteenth Amendment. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 745 (7th Cir. 2013) (no liberty interest in avoiding 182 days' segregation); *Lekas,* 405 F.3d at 612 (noting that 90 days' segregation was "still not so long as to work an atypical and significant hardship").

                                                                                                    AFFIRMED