NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 27, 2019[*]
Decided April 11, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-1679

| | |
|---|---|
| DION MATHEWS, <br> *Plaintiff-Appellant,* | Appeal from the United States District <br> Court for the Western District of Wisconsin. |
| *v.* | No. 16-cv-650-slc |
| LEBBEUS BROWN, *et al.,* <br> *Defendants-Appellees.* | Stephen L. Crocker, <br> *Magistrate Judge.* |

## O R D E R

Correctional officers at a Wisconsin prison placed inmate Dion Mathews in isolated housing for writing a "group petition," in violation of a Department of Corrections regulation. Mathews sued several officers, asserting violations of his First and Fourteenth Amendment rights. *See* 42 U.S.C. § 1983. The district court entered

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

summary judgment for the defendants. Because the correctional officers are entitled to qualified immunity, we affirm the judgment.

Correctional officers suspected Mathews of gang activity and searched his cell. They found a letter with proposals "brought forth by the prisoners of WSPF"; according to Mathews, he wanted to present prison administrators with ideas for improving inmate–administration communication. The officers also found two similar letters in inmate Oscar Garner's cell. The letters introduced suggestions with phrases like "we propose" and "we ask." According to Officer Lebbeus Brown, a letter from anonymous inmates can lead to intimidation, coercion, and violent confrontations among prisoners.

Based on these letters, Brown issued conduct reports accusing Mathews and Garner of "join[ing] in or solicit[ing] another to join [a] group petition or statement." WIS. ADMIN. CODE DOC § 303.24(2); *see also Garner v. Brown*, No. 18-1524, 2018 WL 5778386, at *2–3 (7th Cir. Nov. 2, 2018) (nonprecedential). The Department, however, permitted inmates to file "group complaints" (i.e., grievances). WIS. ADMIN. CODE DOC § 310.10(7) (2014). A complaint examiner explained that inmates must try to resolve informally "*all*" grievances before filing a complaint. *See id.* §§ 310.09(4), 310.10(1). (The prison has disciplined Mathews for circulating a letter to the warden from "A[dministrative] C[onfinement] prisoners," but Mathews also has submitted group complaints without consequence.) Mathews insists that his letters were to be his attempts at informal resolution. Moreover, Mathews shared the letters with Garner, he says, because Garner was his jailhouse lawyer; inmates may seek legal advice from each other. *See id.* § 309.155(5).

After the conduct report was sustained, correctional officers placed Mathews in restricted housing for 18 months: 33 days in disciplinary separation, 17 days in less-restrictive disciplinary separation, and the remainder in administrative detention. Inmates in disciplinary separation get five to ten hours of outside-cell activity (including two hours of outdoor recreation), three showers, and one hour of video visitation per week and one or two phone calls per month. Those in less-restrictive separation and administrative detention face similar limits, but they may keep more personal property, including a television, and may make three phone calls per month.

Mathews sued Brown and other correctional officers for punishing him under a vague regulation and in retaliation for attempting to informally resolve a grievance. A magistrate judge, presiding by consent, s*ee* 28 U.S.C. § 636(c), screened Mathews's complaint under 18 U.S.C. § 1915A and, after reconsidering, allowed him to proceed on First Amendment retaliation and a Fourteenth Amendment due-process claims.

Mathews learned during discovery that a non-defendant officer threw out his letters while cleaning the evidence room. That officer learned of this lawsuit two months later. Mathews moved for sanctions, but the court denied the motion because it concluded that the defendants had not destroyed the letters in bad faith.

The magistrate judge later granted the defendants' motion for summary judgment. On Mathews's due process claim, he ruled that there was a factual dispute whether the defendants deprived Mathews of a liberty interest, but the regulation was not vague as applied to him. On his First Amendment claim, the judge determined that the letters were not protected speech. Alternatively, he concluded, the defendants were entitled to qualified immunity on both claims.

We review the entry of summary judgment de novo, casting the record in the in the light most favorable to Mathews, the nonmovant. *See Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). We may affirm on any basis presented in the record. *See Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016).

On appeal, Mathews first renews his argument that the regulation banning group petitions was unconstitutionally vague. He asserts that he had no notice of what distinguished a permissible, informal attempt at resolving a group grievance from a prohibited group petition. A regulation violates due process when it is so vague that it is necessarily applied arbitrarily. *Rios v. Lane*, 812 F.2d 1032, 1038 (7th Cir. 1987).

We agree with Mathews that the Department's since-revised prohibition on group petitions was at least confusing when read together with its rules on group complaints. In *Toston v. Thurmer*, 689 F.3d 828 (7th Cir. 2012), we ruled that a prison's ban on the possession of "gang literature" did not adequately notify prisoners that they were not permitted to copy information about gangs from available books. *Id.* at 831–32. Here, not only *could* inmates attempt to resolve their concerns informally, but they *had* to before filing a permissible group complaint. The regulations, however, do not articulate what an attempt at informal resolution might look like. Mathews maintains that he intended his *group* letter to serve as the required, informal precursor to his *group* complaint. He could not have known that he might be punished for following a prison policy. *See Maben v. Thelen*, 887 F.3d 252, 265–66 (6th Cir. 2018). Mathews also did not have notice that sharing his letters with his jailhouse lawyer, as the rules permit, could subject him to discipline.

The defendants contend that the regulation was not vague as applied to Mathews because he had experience with group complaints and petitions. To be

disciplined under a regulation, an inmate must have warning that his conduct is prohibited. *See Rios*, 812 F.2d at 1038. True, Mathews had been disciplined for trying to circulate a letter from an anonymous group of inmates. But that is different from drafting a letter and sharing it with only his jailhouse lawyer. And the group complaint he submitted previously did not give him notice of what conduct was prohibited.

Still, Mathews cannot succeed on his due-process claim because he has not shown that the defendants deprived him of a clearly defined liberty interest. Qualified immunity shields government officials from damages if they did not violate a clearly established, specific federal right. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). The Fourteenth Amendment protects inmates' interests in avoiding conditions which impose an "atypical and significant hardship." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). We consider the duration and conditions of the confinement. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009). Prisoners do not have a liberty interest in avoiding transfer from the general prison population to discretionary segregation, and even "extremely harsh prison conditions" may not be so "atypical" as to create a liberty interest. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (collecting cases). In *Hardaway v. Meyerhoff*, 734 F.3d 740 (7th Cir. 2013), we concluded that six months and a day in a cell with a confrontational cellmate, suffering psychologically, and with only weekly access to showers and the prison yard was not clearly significant and atypical. *Id.* at 744–45. Mathews had a longer term in restricted housing than we considered in *Hardaway*, but he had greater access to the yard and showers, weekly visits, and three phone calls per month. He was not devoid indefinitely of human contact or sensory stimuli. *Cf. Wilkinson v. Austin*, 545 U.S. 209, 214 (2005). We cannot say on this record that Mathews had a "clearly established" right to avoid segregation.

Mathews next challenges the magistrate judge's resolution of his First Amendment retaliation claim, arguing that the defendants could not have reasonably believed that the letters, which used permissive language like "we propose" and "we ask," were dangerous. We agree with the judge, however, that the defendants are entitled to qualified immunity on this claim, too. A restriction is valid under the First Amendment if it is reasonably related to a legitimate government interest, considering (1) its connection to the prison's interests, (2) other available means of speech, (3) the impact of the accommodation, and (4) alternative measures to advance the interest. *Turner v. Safley*, 482 U.S. 78, 89–90 (1987); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). Here, the defendants would not have known that letters from "the prisoners" with language like "*we* propose" and "*we* ask" were protected: the phrasing shows collective action, which threatens prison security. *See Van den Bosch v. Raemisch*, 658 F.3d

778, 788 (7th Cir. 2011) ("The essential question is not whether the threats were eventually carried out, but whether plaintiff has shown that it was not reasonable for defendants to perceive the [letters] as a potential threat to rehabilitation and security."). According to the correctional officers, Mathews could have met the informal resolution requirement by signing a letter on his own behalf and, the officers submit, permitting him to write and share these letters would disrupt regular prison operations. Finally, Mathews has not shown that the officers had reasonable alternatives to confiscating them. Altogether, Mathews did not show that the defendants violated a clearly established First Amendment right. *See Kemp v. Liebel*, 877 F.3d 346, 354 (7th Cir. 2017).

Mathews raises two more issues, but both are meritless. First, he says that the magistrate judge should have sanctioned the defendants for spoliation because the letters at issue were thrown out. But sanctions would be appropriate only if the defendants destroyed the evidence in bad faith, *see United States v. Funds in the Amount of $100,120.00*, 901 F.3d 758, 766 (7th Cir. 2018), and here, a non-defendant threw out the letters by mistake. In addition, the parties agree on the letters' contents, so Mathews has not been prejudiced by their absence. Second, Mathews incorrectly contends that the judge erroneously denied his motion for recruited counsel based on his ability to litigate with a jailhouse lawyer's help. The judge noted that another inmate was helping, but he determined that Mathews could navigate the case's complexity because the submissions that he authored were "clear and well-written with citations to relevant authority," and he successfully had moved the court to reconsider its initial screening order. The judge's assessment was reasonable. *See Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc).

The judgment is AFFIRMED.