NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 6, 2019
Decided July 2, 2020

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1086

| | |
|---|---|
| KEITH McCOY,<br>*Plaintiff-Appellant*, | Appeal from the United States District Court<br>for the Northern District of Indiana,<br>Hammond Division. |
| *v.* | No. 2:14-cv-00355-PPS |
| MICHAEL ATHERTON, *et al.*,<br>*Defendants-Appellees*. | Philip P. Simon,<br>*Judge.* |

## O R D E R

Keith McCoy, a pretrial detainee who is gay, was assigned to administrative segregation by officials at the Lake County Jail, purportedly out of concern for his safety and that of the other inmates.[1] McCoy brought this suit, alleging that his placement in

---

[1] McCoy's original complaint incorporated an intake form from the American Civil Liberties Union of Indiana. The person preparing that form stated that "McCoy is a gay man who identifies as a woman," a characterization that prompted the district

(continued...)

administrative segregation on the jail's medical floor violated due process. McCoy also sued a guard for deliberate indifference based on the guard's slow response to McCoy's need for medical treatment after he was injured in a fight with another inmate. The district court entered summary judgment for the defendants. We affirm.

We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to McCoy and construing all reasonable inferences from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When McCoy arrived at Lake County Jail, he qualified for placement in the general population, but Deputy Warden Jose Menchaca assigned him to administrative segregation. Menchaca, who "personally classified McCoy," claimed that the "classification was not punitive, instead it was primarily to protect him." R. 126-2, Affidavit of Jose Menchaca. Menchaca asserted that "McCoy was placed in administrative segregation on the medical floor of the jail, to protect him from other inmates preying on him and from him potentially preying on other inmates due to McCoy's sexual orientation." R. 126-2. Menchaca cited no prison policy and no facts particular to McCoy (other than his sexual orientation) in support of the classification decision.[2]

McCoy, who spent three months on the medical floor, characterized his living conditions as unsanitary and dangerous. In particular, he said that his cell was dirty—

---

[1](...continued)
court to use female pronouns). In McCoy's *pro se* appellate briefs, McCoy refers to himself as a gay man and consistently uses male pronouns, so we use male pronouns here.

[2] Although we have noted that gay prisoners are victimized more often than other prisoners, *see Ramos v. Hamblin*, 840 F.3d 442, 444 (7th Cir. 2016) (discussing the vulnerability and victimization of inmates who are gay or even perceived as such by fellow inmates), there is no evidence in this record that gay prisoners as a class present any special risk as predators towards other inmates. The defendants cite no such evidence either in the record or in scholarly literature, and they have cited no information specific to McCoy to support Menchaca's subjective belief that McCoy was a potential predator simply because of his sexual orientation. *Amicus* characterizes Menchaca's unfounded belief that gay prisoners are predatory as evidence that the classification decision was based on prejudice rather than prison security management. Because we decide the case on other grounds, we need not address this issue further.

there were stray hairs near his bed, a dirty piece of toilet paper on the floor, dried urine on the toilet seat, and soap scum in the sink—and that he did not receive any cleaning supplies when he requested them. McCoy also feared that he was being exposed to airborne diseases and objected to living among potentially violent, mentally ill inmates who were housed on the medical floor.

A month into his stay in administrative segregation, McCoy was in a physical altercation with another inmate. McCoy alleged that the other inmate stabbed his leg with a broken broom handle and that jail guard Michael Atherton ignored his wounds. According to the jail's log of the incident, Atherton responded "immediately." Atherton broke up the fight and called for medical staff, who arrived within seconds. They found no significant injuries on McCoy. The next day, McCoy received treatment for what is described in his medical records as "superficial abrasions."

McCoy sued Menchaca, Atherton, and other prison officials. The district court screened his complaint, *see* 28 U.S.C. § 1915A, and allowed McCoy to proceed on his due-process and deliberate-indifference claims. The court later entered summary judgment for the defendants, concluding that there was no evidence that McCoy's placement in segregation was punitive (so it did not require due process protections) or that Atherton was deliberately indifferent to his injuries.

On appeal, McCoy, proceeding *pro se*, mostly rehashed the allegations in his complaint. After reviewing the briefs and the record on appeal, we *sua sponte* appointed counsel for McCoy. In addition to addressing any issues that counsel deemed appropriate, we specifically directed counsel to discuss "whether McCoy, a pretrial detainee assigned to administrative segregation because he is gay and possibly gender nonconforming, has established that he was deprived of a liberty interest without due process, *see, e.g.*, *Vitek v. Jones*, 445 U.S. 480 (1980), and whether he pleaded an equal protection violation." Subsequently, appointed counsel moved to withdraw from representing McCoy, citing irreconcilable differences regarding the strategy, management and direction of the appeal. Counsel believed that the court would still benefit from additional briefing and oral argument, and asked to file an *amicus curiae* brief in support of reversal. McCoy consented to counsel's withdrawal but opposed the filing of the *amicus* brief. We granted counsel's motion and counsel filed the promised

*amicus* brief and presented oral argument.[3] Because McCoy wished to proceed *pro se*, we are unable to consider issues argued in the *amicus* brief that have not been preserved or advanced by McCoy in his *pro se* appellate briefs. *See Justice v. CSX Transp., Inc.*, 908 F.2d 119, 125 (7th Cir. 1990) ("In an appellate court, as distinct from a trial court, the difference between participation as a party and as an amicus is often nominal—unless the party waives some good issues, for an amicus could not unwaive them."); *Charles v. Daley*, 846 F.2d 1057, 1059 n.1 (7th Cir. 1988) ("an *amicus* ordinarily may not press arguments on appeal that the parties have waived by raising them belatedly"). That means we will not address any possible equal protection claim or any issues related to discovery rulings, issues that were advanced solely by *amicus curiae*. We are left to address only the issues that McCoy raised in his *pro se* briefs, as supplemented by *amicus curiae*.

Liberally construing McCoy's *pro se* filings, we understand him to rely on *Vitek*, in which the Supreme Court ruled that the involuntary transfer of a state prisoner to a mental hospital for mandatory behavior modification treatment implicates a liberty interest that is protected by due process. 445 U.S. at 487–88. The Court there relied on the prisoner's reasonable expectation for a designated process under state law, as well as the "stigmatizing consequences" of the move, and the compelled psychiatric treatment which together constituted a major change in the conditions of confinement. *Id*. McCoy seems to argue that his transfer to segregation in the medical wing was akin to the prisoner's transfer in *Vitek* that infringed on a liberty interest.

The record, however, fails to demonstrate that the defendants violated McCoy's due process rights. To establish a due process violation, McCoy needed to present evidence that the defendants deprived him of a liberty interest by imposing an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), taking together the conditions and duration of his term in segregation, *see Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Accepting McCoy's characterization that he lived in a dirty cell near physically and mentally ill inmates, his conditions were not so atypical and significantly harsh as to implicate a liberty interest. *See, e.g., Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (inmate not deprived of liberty interest when he spent six months in segregation behind a steel door with a confrontational cellmate and had only weekly access to

---

[3] Ishan K. Bhabha and Gabriel K. Gillett of Jenner & Block LLP have the thanks of the court for their excellent work as *amicus curiae*.

shower and prison yard); *Earl v. Racine County Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (same when inmate spent five days in protective segregation with a suicide-proof blanket, with reduced access to writing and eating utensils, and with heavy monitoring).[4] Moreover, he was segregated for only three months, which, given the circumstances of his confinement, is generally not long enough to trigger due process protections. *See Marion*, 559 F.3d at 697– 98 n.2 (characterizing up to 90 days in segregation as a relatively short period, depending on the conditions imposed). Though McCoy might have had a liberty interest in avoiding transfer to a mental hospital for involuntary psychiatric treatment, *see Vitek*, 445 U.S. at 487–88, that interest does not extend to his intra-prison transfer to a wing for the physically and mentally ill, a move which did not contravene state law and did not carry the same significant and stigmatizing consequences as transfer to a mental hospital for involuntary psychiatric treatment.

As for his deliberate-indifference claim against Atherton, McCoy similarly failed to raise any factual dispute. Because McCoy is a pretrial detainee asserting indifference to his medical injuries, we consider only whether Atherton's conduct (in response to the fight) was objectively unreasonable. *See Kingsley v. Hendrickson*, 576 U.S. 389, 395–97 (2015); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). We agree with the district court that McCoy offered no evidence contradicting the jail log's account of the incident. According to the jail's records, Atherton "immediately" broke up the fight and called for medical staff. Medical staff then examined McCoy, found no significant wounds, and treated him the next day for "superficial abrasions." Atherton's response to these circumstances was not objectively unreasonable and the district court was right to enter summary judgment in Atherton's favor.

AFFIRMED.

---

[4] *Amicus* characterized administrative segregation on the medical floor as akin to solitary confinement and asserted that McCoy was in his cell twenty-three hours per day, with only one hour per day of "range time." Although there is some indication in the record that McCoy was in a single-person cell, the record cites provided by *amicus* do not support the assertion that McCoy was confined to his cell for twenty-three hours per day or that the conditions were akin to solitary confinement. We assume without deciding that such conditions might be constitutionally suspect for a pretrial detainee, especially given the thin justification and minimal process provided for the placement here, but McCoy has failed to provide evidence in support of this assertion.