NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 19, 2021[*]
Decided March 24, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-1858

| | |
|---|---|
| ALVIN WILLIAMS, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| v. | No. 1:18-cv-01383-MMM |
| CHAD BROWN, et al., *Defendants-Appellees.* | Michael M. Mihm, *Judge.* |

**O R D E R**

Alvin Williams, an Illinois inmate, was confined to eight months' segregation for a disciplinary infraction that the prison later expunged based on problems with his disciplinary process. He sued several officers responsible for his botched disciplinary proceedings, alleging that they denied him due process and, as result of their missteps,

---

[*] Appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and record, we have concluded that the case is appropriate for summary disposition. FED. R. APP. P. 34(a)(2).

subjected him to inhumane conditions in segregation. See 42 U.S.C. § 1983. The district court dismissed the complaint at screening for failure to state a claim, reasoning that the expungement of Williams's disciplinary infraction afforded him all the process he was due. But the expungement came five months after Williams had served his time in punitive segregation—too late to protect his liberty interest in avoiding the allegedly atypical hardships faced there. Accordingly, we vacate the judgment in part, affirm the judgment in part, and remand for further proceedings.

We take as true the factual allegations from Williams's most recent complaint (the second amended version). *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). In October 2015, one of Williams's fellow inmates at the Pontiac Correctional Center died in custody. A rumor spread that correctional officers had been responsible for the death. Williams was overheard remarking, "If they killed him," the officers would "get what they got coming—charges for murder." His remark was construed as a "dangerous communication" and reported to the prison.

A flawed disciplinary process ensued. Two correctional officers issued Williams a written disciplinary charge that failed to describe the offense. They also made no recording of the interview they later conducted with Williams. At Williams's five-minute hearing before the disciplinary council, he was not allowed witnesses. The council found him guilty, based only on the disciplinary report, and sentenced him to six months' segregation (on top of the two months he spent there while the disciplinary process was pending). Williams appealed to the Administrative Review Board.

In segregation, Williams alleged, he was deprived of bedding, exposed to relentless light that made sleep impossible, threatened repeatedly by other inmates, and subjected to an environment contaminated by feces and urine. Five months after Williams's release from segregation, in November 2016, the Administrative Review Board overturned the disciplinary council's ruling. The Board concluded that Williams had not received a fair disciplinary process, in part because the council refused to call his witnesses. The Board ordered that the infraction be expunged.

In October 2018, Williams filed this lawsuit. The district court twice screened and dismissed versions of Williams's complaints, see 28 U.S.C. § 1915A, based on improper joinder and Illinois's two-year statute of limitations (as the events in question happened between October 2015 and June 2016). The court permitted Williams to amend his complaint once more and directed him to identify any claims that were in the grievance process long enough to toll the statute of limitations.

In his second amended complaint, Williams asserted two due process claims. First, he contended that his disciplinary report violated the Illinois Department of

Corrections' regulations by failing to list the subject of the investigation or the place, time, and date of the offense. Second, he complained that he was not allowed to call witnesses to the hearing, also in violation of the Department's regulations. As a result of those violations, he said, he was placed in segregation, where he suffered significant hardship. Williams also asserted a retaliation claim—that his overheard remark spurred retaliatory acts by both the correctional officers (who filed a defective disciplinary report) and the disciplinary council (which denied his request for witnesses at his hearing). He attached to his complaint a handwritten list of grievances that were pending in October 2016, including the one about the disciplinary conviction that the Board expunged.

The district court dismissed Williams's second amended complaint[1] with prejudice for failing to state a claim. 28 U.S.C. § 1915A. With regard to Williams's due process claims, the court concluded that the Administrative Review Board's expungement of the disciplinary infraction provided Williams all the process he was due. As for the retaliation claims, the court continued, none of the underlying grievances had been filed within the two-year statute-of-limitations period.

On appeal, Williams principally challenges the dismissal of his due process claims. He maintains that he adequately stated a due process claim by alleging that the disciplinary report omitted necessary information, that he was not allowed to call witnesses at his disciplinary hearing, and that—as a consequence of the due process violations—he suffered a lengthy confinement to a segregation cell with horrendous conditions. He underscores that the expungement occurred five months after he had completed his time in disciplinary segregation.

At issue here is whether due process is satisfied by the expungement of a flawed disciplinary infraction after an inmate already has served a lengthy period in punitive segregation.[2] On the one hand, an administrative appeal can satisfy due process where it cures the procedural defect and safeguards the inmate's protected interest. See, *e.g.*, *Morissette v. Peters*, 45 F.3d 1119, 1121–22 (7th Cir. 1995) (due process satisfied where administrative appeal corrected flawed disciplinary record and inmate spent no time in

---

[1] The district court mislabeled Williams's complaint as his "third amended."

[2] We are generously construing Williams's allegations as complaints that his federal due process rights were violated. Whether or not the prison authorities followed Illinois law is neither here nor there: "[t]he meaning of the Due Process Clause is a matter of federal law, and a constitutional suit is not a way to enforce state law through the back door." *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019).

unnecessary segregation); *Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015) (due process satisfied where administrative appeal corrected inmate's record and restored loss of 14 days' good-time credits).

It is less apparent, however, that due process is satisfied when an inmate's protected interest—for example, in avoiding prolonged confinement in segregation—is not safeguarded by the later administrative action. See *Walker v. Bates*, 23 F.3d 652, 658 (2d Cir. 1994) (reversing dismissal of § 1983 complaint alleging that procedural defects in disciplinary hearing were not cured by successful administrative appeal; it is a "fiction that the administrative appeals process provided for prisoners is a continuation of the disciplinary hearing and provides all the due process necessary"); *Morissette*, 45 F.3d at 1122 n.4 (noting that to provide due process, "administrative appeal must correct the procedural error *before* the punishment begins") (emphasis added). See also *Hardaway v. Meyerhoff,* 734 F.3d 740, 743–45 (7th Cir. 2013) (suggesting that expungement of disciplinary infraction may not bar due process claim for prisoner whose punitive confinement implicates liberty interest).

The district court here grounded its decision in an unpublished order from the Southern District of Illinois, *Sanchez v. Godinez*, 14-CV-275-JPG, 2014 WL 1097435 (S.D. Ill. March 20, 2014), which concluded that a successful administrative appeal cured any procedural defect in the prisoner's disciplinary hearing. The court in our case quoted the Southern District's rationale:

> As a result [of expungement], Plaintiff ultimately received the process to which he was due, even though his victory came too late to have prevented him from serving the segregation time. Because the disciplinary action was expunged, and for the reasons outlined below, Plaintiff now has no cognizable civil rights claim.

*Id*. at *2.

The district court's reliance on *Sanchez*, however, was misplaced. The *Sanchez* court determined that expungement provided adequate due process because the prisoner there had no protected liberty interest in avoiding segregation. *Id.* at *2–3. He not only had served just 30 days in segregation, a duration so brief that it foreclosed any implicated liberty interest, see *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 & nn. 2–3 (7th Cir. 2009), but he also raised no complaints about the conditions of his segregation. See *Wilkinson v. Austin*, 545 U.S. 209, 221–23 (2005). Williams, in contrast,

spent eight months in segregation[3]—a duration long enough to implicate a liberty interest—and he asserted that the conditions there put his health and life at risk. See *Marion*, 559 F.3d at 698–99 (remanding for district court to determine whether, based on conditions of confinement, eight months' segregation implicated liberty interest). The other case relied on by the district court, *Leslie v. Doyle*, 125 F.3d 1132 (7th Cir 1997), is also inapposite. There, the prisoner spent only 15 days in segregation and thus also had no liberty interest at stake in his disciplinary process. *Id.* at 1137.

There is no question here that Williams adequately pleaded deficient procedure in the disciplinary process that led to his punitive segregation. He alleged that the defendants violated his due process rights by filing a disciplinary report that did not notify him of the details of his charges and by refusing to call or interview his witnesses. See *Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974). Thus, given the prolonged stretch of time that Williams was forced to spend in segregation and the conditions he alleged to have endured while there, we conclude that the administrative reversal and expungement does not bar his due process claim and that his complaint states a claim for relief. He must be allowed to proceed on that claim.

Because the district court wrongly concluded that Williams received all the process he was due, we remand the case for further proceedings. In allowing this due process claim to go forward, we repeat that we have assumed Williams's allegations to be true. Further proceedings are needed to determine if that indeed is the case.

In closing, we quickly dispense with Williams's remaining challenges. He first contests the dismissal of his retaliation claims as barred by the statute of limitations. But those claims accrued in October 2015, the date of the allegedly retaliatory disciplinary hearing, and he did not allege that he filed any grievance about retaliation that would have tolled the statute of limitations. See *Terry v. Spencer*, 888 F.3d 890, 894 (7th Cir. 2018).

Williams also maintains that the district court ignored his allegations about the conditions of his confinement—*i.e.*, the denials of medical care, edible food, mail

---

[3] In calculating eight months, we include Williams's two months in segregation while his disciplinary process was pending and his six months in punitive segregation. Though some cases suggest that nonpunitive segregation can never implicate a liberty interest, see, *e.g.*, *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008), our more recent cases question that conclusion, particularly if the type of segregated confinement meets the test under *Wilkinson*, 545 U.S. at 221–23. See, *e.g.*, *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013); *Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011).

services, and human contact. But Williams's second amended complaint, which supersedes all earlier complaints, see *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014), does not mention those allegations; the only pertinent allegations there address the procedural shortcomings that landed him in segregation.

Finally, Williams argues that the district court acted prematurely by not allowing his case to proceed to discovery. But Williams misapprehends the purpose of the Prison Litigation Reform Act, 28 U.S.C. § 1915A, which is to impose a threshold review to reduce the number of frivolous suits by prisoners. See, e.g., *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000).

We VACATE the dismissal of Williams's due process claim and REMAND the case for further proceedings. In all other respects, we AFFIRM the judgment of the district court.